UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ASHOT EGIAZARYAN | : |
| | : |
| v. | : |
| | : |
| PETER ZALMAYEV | : |

Case No. 1:11-cv-02670 (PKC)

---

**PETER ZALMAYEV'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE 12(b)(6)**

## TABLE OF CONTENTS

| Section | Page |
|---|---|
| INTRODUCTION | 1 |
| I.   FACTS | 2 |
| The Oligarch vs. the Human Rights Activist | |
| A.   Egiazaryan, Zhirinovsky and the LDPR | 2 |
| B.   Ponomarev's and Alexeyeva's Letters | 3 |
| C.   Zalmayev's Article | 5 |
| D.   Komarovsky's Article | 7 |
| E.   Freedom House, the American Jewish Committee and the National Council on Soviet Jewry's Letters | 7 |
| F.   Egiazaryan's Claims | 8 |
| II.   ARGUMENT | 9 |
| A.   New York Law Controls This Action | 9 |
| B.   New York Defamation Law Particularly Protects Opinion | 12 |

C.   The Challenged Statements Are Not Libelous          16
     Because They Contain True Statements of Fact and
     Opinion

     1.   Zalmayev's Article And The Basic "Dispute"     16

     2.   Zalmayev Is Not Liable for Defamation For      18
          Komarovsky's Article (Count II)

     3.   Zalmayev Is Not Liable for Defamation For      19
          the Letters (Counts III and IV)

     4.   Zalmayev's Contact With The Article And        22
          Letter Writers Does Not Contain The
          Required Degree of Fault

D.   The Claim for Injurious Falsehood (Count V) Must    24
     be Dismissed Because No Business of Egiazaryan
     Is Involved

CONCLUSION                                               25

ii

**INTRODUCTION**

This defamation action is brought by Ashot Egiazaryan (sometimes spelled in translation Yeghiazaryan), a fugitive Russian oligarch, appointed to Russia's legislature by the Liberal Democratic Party of Russia (LDPR), against Peter Zalmayev, a naturalized American citizen and human rights activist living in New York City.  Zalmayev has written about the anti-Semitic, xenophobic, anti-American rhetoric of Vladimir Zhirinovsky, LDPR's leader, and expressed the opinion that Egiazaryan should not be granted political asylum in the United States due to his affiliation with Zhirinovsky and the LDPR. Egiazaryan brings this suit to silence the expression of such opinions.

Zalmayev's writing and statements are constitutionally protected because Egiazaryan is a limited public figure and it is a matter of public interest whether he should be granted asylum in the United States.  Unlike the typical political refugee, Egiazaryan lives in Beverly Hills and as demonstrated by his retention of "attorneys, consultants and public relations professionals" (Comp. ¶ 98.iii), his wealth provides him ample resources to publicize his version of events and defend himself in the court of public opinion.

Zalmayev moves to dismiss counts II through V, and will move for summary judgment on count I.

I.   **FACTS**

**The Oligarch[1] vs. the Human Rights Activist**

    A.   **Egiazaryan, Zhirinovsky and the LDPR**

    For purposes of this motion alone, the allegations in the complaint will be treated as true, though many are not.

    Egiazaryan is a citizen of Russia. (Comp. ¶ 4.)  Since the end of the Soviet Union, he has been a prominent banker and businessman in Moscow and has also been a member of Russia's Duma, the lower house of the legislature.  (Comp. ¶ 4.)  The LDPR appointed Egiazaryan as one of its deputies in the Duma, and he has represented the LDPR in the Duma (Comp. ¶ 37, 4.)

    The LDPR is led by Vladimir Zhirinovsky. (Comp. ¶ 37 and Exhibits A — E to the complaint.)  Exhibits A, B, C, & E to the complaint assert that Zhirinovsky is an outspoken ultra-nationalist, anti-American and anti-Semite who blames Jews for, among other things, having started the Second World War, the Holocaust, and the attack on the World Trade Center. Egiazaryan's failed attempt to distance himself from LDPR is an acknowledgement of LDPR's repellent policies.

    The complaint describes some of Egiazaryan's business dealings and his international litigation, none of which involve Zalmayev.  At some point, a Russian prosecutor began a criminal investigation of Egiazaryan.  The complaint is silent about the

---

[1] "Oligarch" is an accepted, defined, term.  <u>OAO Alfa Bank v. Center for Public Integrity</u>, 387 F.Supp.2d 20 (D.C. D.C. 2005)

transaction the prosecutor is investigating or when it began, but according to the Associated Press's Douglas Birch, who met with Egiazaryan while "flanked by lawyers,"[2] and who has written at least two articles about him, the criminal charges involve "a $65 million fraud and embezzlement case."[3]  Notably, the complaint does not say that the criminal charges relate to the Moskva Hotel dispute, the description of which occupies a substantial amount the complaint.  The Duma voted to eliminate Egiazaryan's Duma immunity from prosecution (Comp. ¶ 67), but by that vote Egiazaryan had left Russia, presumably to avoid arrest.  (Exhibit 3.)

Egiazaryan arrived in the United States in 2010 and lives in Beverly Hills, California.[4]  (Comp. ¶ 4.)

**B.   Ponomarev's and Alexeyeva's Letters**

In January 2011, two human rights activists in Moscow, Lev Ponomarev and Lyudmila Alexeyeva, wrote letters to members of Congress concerning Egiazaryan.  The letters referenced a proposal in Congress to expand the no-entry list maintained by the Border Patrol so as to exclude corrupt government officials. The prevalence of corrupt government officials has given rise to a word describing this new form of "government"—-Kleptocracy

---

[2] AP, February 6, 2011, http://finance.yahoo.com/news/AP-Exclusive-Fearful-Russian-apf-203931339.html?x=0
[3] AP, March 9, 2011, http://www.washingtonpost.com/wp-dyn/content/article/2011/03/09/AR2011030904306.html.
[4] Neither the coversheet nor the complaint provide Egiazaryan's street address in Beverly Hills, California.

(http://www.america.gov/st/democracyhr-

english/2006/December/20080601225742SrenoD6.734866e-02.html).

The letters questioned whether Egiazaryan should be permitted to

remain in the United States and urged the recipients to contact

the State Department and the Department of Homeland Security

about Egiazaryan and his continued presence in the United

States. (Comp. ¶ 52, Exhibit C.)  The letters stated that

Egiazaryan had been the deputy chairman of the Duma's Committee

for Assistance in Political Regulation and Observance of Human

Rights in Chechnya.  Ponomarev wrote:

> The Committee was entrusted with funds for the
> reconstruction of the war-torn region — a large
> portion of which funds, according to several
> credible reports, did not reach their addressee.
> As such, therefore, Mr. Yegiazaryan was a
> contributor to the destructive second Chechen
> war.

(Comp. Exhibit C.)  Similarly, Alexeyeva wrote:

> In addition to providing cover for the numerous
> well-documented atrocities during the war, the
> Committee's management of the funds allocated for
> Chechnya's reconstruction was said to have
> resulted in significant amounts never reaching
> their destination — the destitute people of the
> war-torn republic.

(Comp. Exhibit C.)

On February 7, 2011, Ponomarev wrote to the members of

Congress saying that he "withdrew his signature" from his

earlier letter, and Alexeyeva wrote that she received

information that "has been called by me into questions [sic]"
(Comp. Exhibit D.), but neither retract the facts asserted.

### C.   Zalmayev's Article

Zalmayev is a naturalized citizen of the United States
currently residing in New York City (Comp. ¶ 5.), who obtained a
first degree from Freed-Hardeman University in Tennessee and a
masters degree from Columbia University.  He is the executive
director of the Eurasia Democracy Initiative, an organization
Zalmayev founded located in New York that is "dedicated to the
promotion of democracy, rule of law and interethnic tolerance in
post-Communist transitional societies of Eastern and Central
Europe, the Caucasus and Central Asia." (Comp. ¶ 5 &
www.eurasiademocracy.org).

Egiazaryan announced that he was considering applying for
asylum in the United States.  (Comp. Exhibits A, B & E.)  On
March 9, 2011, The Jewish Journal, a weekly newspaper in Los
Angeles, California with approximately 150,000 readers,
published an article written by Zalmayev about Egiazaryan,
Zhirinovsky and the LDPR.  (Comp. ¶ 23 & Exhibit A.)  The article
stated facts about Egiazaryan—–all of which are true--and
criticized Egiazaryan's association with Zhirinovsky and the
LDPR.

Zalmayev's article accurately describes Egiazaryan's
connections to the LDPR and the "criminal case against him on

charges that he defrauded business partners in a multimillion-dollar real estate deal that went south." Egiazaryan does not dispute the existence or summary of the criminal case and does not allege that the criminal charges are part of Suleyman Kerimov's plot to "to steal Mr. Egiazaryan's ownership interest . . . in the Moskva Hotel" project. (Comp. ¶ 10). The article refers to some of the LDPR's policies, as expressed by the LDPR's leader, Zhirinovsky, who "blam[es] the Jews for sparking both the Bolshevik revolution and World War II, provoking the Holocaust and masterminding 9/11." The article describes different reactions to Egiazaryan's request for political asylum and expresses Zalmayev's opinion that Egiazaryan should not be granted asylum.

Except for quibbling over the precise nature of Egiazaryan's connection to Zhirinovsky and the LDPR (which is in itself an admission by Egiazaryan of the LDPR's repellent views), the complaint does not dispute the truth of the article.

Egiazaryan has been a deputy appointed to the Duma to represent the LDPR since 1999, what he calls a "non-party candidate nominated to [LDPR's] parliament group." (Comp. ¶ 37). Russians vote for political parties, and the parties fill the seats they win in the Duma from a list prepared by the party leadership. Egiazaryan has always obtained his seat in the Duma through this process. He has never been directly elected to the

Duma by the voters and owes his position in the Duma to the LDPR leadership. (Comp. ¶ 37.)

### D.   Komarovsky's Article

Leonid Komarovsky, a Russian now living in Boston, wrote an article published on March 14, 2011, by The Moscow Times, an English language newspaper published in Moscow.  (Comp. ¶ 41-42) The article contains some of the facts stated in Zalmayev's article and contains additional facts and opinions concerning Egiazaryan, including calling Egiazaryan an "anti-Semitic bigot." (Comp. Exhibit B.)

### E.   Freedom House, the American Jewish Committee and the National Council on Soviet Jewry's Letters

On March 14, 2011, Freedom House, the American Jewish Committee, and the National Council on Soviet Jewry wrote joint letters to Janet Napolitano, the Secretary of the Department of Homeland Security, and Hannah Rosenthal, the Special Envoy of the Office to Monitor and Combat Anti-Semitism of the State Department, opposing the grant of political asylum to Egiazaryan. (Comp. Exhibit E)  The facts asserted in these letters concerning Egiazaryan, Zhirinovsky and the LDPR are consistent with the facts asserted in Zalmayev's article in the Jewish Journal.  The letters assert that Zhirinovsky and the LDPR are anti-Semitic, anti-American and xenophobic and that Egiazaryan's association with Zhirinovsky and the LDPR as a

7

member of the party's delegation in the Duma should preclude his
obtaining asylum in the United States.

**F.   Egiazaryan's Claims**

Egiazaryan commenced this action against Zalmayev alleging
claims for defamation and injurious falsehood.

> Count I: Defamation regarding Zalmayev's article in
> the Jewish Journal, exhibit A.

> Count II: Defamation against Zalmayev for an article
> written by Leonid Komarovsky in The Moscow Times,
> exhibit B.

> Count III: Defamation against Zalmayev for letters
> written by Lev Ponomarev and Lyudmila Alexeyeva
> to members of the United States House of
> Representatives, exhibit C.

> Count IV: Defamation against Zalmayev for letters
> written by Freedom House, American Jewish
> Committee, National Council on Soviet Jewry to
> Secretary Janet Napolitano, Department of
> Homeland Security, and Ambassador Hannah
> Rosenthal, Office to Monitor and Combat Anti-
> Semitism, Department of State, exhibit E.

> Count V: Injurious falsehood.

Zalmayev moves pursuant to Fed. R. Civ. P. 12 (b)(6) to
dismiss counts II through V of the complaint.  Because of the
length and complexity of the complaint, and that count I refers
to the article written by Zalmayev, Zalmayev is not moving to
dismiss count I.  Zalmayev intends to move for summary judgment
after obtaining documents from Egiazaryan and deposing him and a
few other witnesses, which will provide the basis for summary
judgment.

8

## II.  ARGUMENT

### A.  New York Law Controls This Action

As a federal court sitting in diversity, the Court must apply the choice of law rules of the state in which it is located: New York.  <u>Lee v. Bankers Trust Co.</u>, 166 F.3d 540, 545 (2d Cir. 1999); <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 47, 496-97, 61 S.Ct. 1020 (1941).  In tort actions, New York applies the law of the forum with the greatest interest in the litigation.  <u>White Plains Coat & Apron Co. v. Cintas Corp.</u>, 460 F.3d 281, 284 (2d Cir. 2006).

There are three jurisdictions that have an interest: California, Washington, D.C., and New York.[5]  The first issue to determine is whether there is an actual conflict in the law of the jurisdictions.  <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 12 (2d Cir. 1998)

The New York law provides greater protection for opinions than California law.

> New York law grants opinions greater protection from
> defamation actions than does California law.
> California law extends no greater protection to
> opinions than does the United States Constitution.
> [citation omitted]  New York, by contrast, in excess of
> the United States Constitution, 'provides for absolute

---

[5] Russia also has an interest, but Russian law presumably does not comply with American concepts concerning defamation and the First Amendment, and New York courts would not apply Russian defamation law. <u>PowerDsine, Inc. v AMI Semiconductor, Inc.</u>, 591 F. Supp.2d 673, 679 n. 37 (S.D.N.Y. 2008)(rejecting Israeli and Belgium defamation law because "those countries lack the stringent speech protections enshrined in the First Amendment.")

9

protection of opinions.' <u>Celle v. Filipino Reporter Enterprises</u>, 209 F.3d 163, 178 (2d Cir. 2000).

<u>Condit v. Dunne</u>, 317 F. Supp.2d 344, 352 (S.D.N.Y. 2004); see also (<u>PowerDsine, Inc. v AMI Semiconductor, Inc.</u>, 591 F. Supp.2d 673, 679-80 (S.D.N.Y. 2008); <u>Sandals Resort Intern. Ltd. v. Google, Inc.</u>, 2011 WL 1885939, * 4-7 (Ap. Div. 1st Dept., May 19, 2011).

Washington D.C. law is congruent with the United States Constitution. <u>Moldea v. New York Times Co.</u>, 22 F.3d 310, 313 (D.C.Cir. 1994), <u>cert. denied</u>, 513 U.S. 875 (1994). The Court must engage in New York's interest analysis.

In multistate defamation actions against media outlets, New York courts consider at least nine factors:

> (1)  the state of the plaintiff's domicile;
> (2)  the state of plaintiff's principal activity to which the alleged defamation relates;
> (3)  the state where the plaintiff in fact suffered greatest harm;
> (4)  the state of the publisher's domicile or incorporation;
> (5)  the state where the defendant's main publishing office is located;
> (6)  the state of principal circulation;
> (7)  the place of emanation;
> (8)  the state where the libel was first seen; and
> (9)  the law of the forum.

<u>Davis v. Costa-Gavras</u>, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984) (following <u>Palmisano v. News Syndicate Co.</u>, 130 F. Supp. 17, 19 (S.D.N.Y. 1955)) Many of these factors are applicable to libel actions against the author of a newspaper article. <u>Condit</u>, 317

10

F. Supp.2d at 354 (<u>Davis</u> factors considered in libel action
against journalist).

Under New York's interest analysis: (1) Egiazaryan is
apparently domiciled in Russia (Comp. ¶ 4), and California has
limited interest in protecting the reputation of a temporary
resident. (2) The alleged libels relate to Egiazaryan's
activities in Russia. (3) Egiazaryan's reputation may have
suffered in California, Russia and Washington, but presumably he
was also harmed in New York where both the <u>Jewish Journal</u> and
the <u>Moscow Times</u> are available online. (Comp. ¶ 114 & 123) (4)
(5) (6) The <u>Jewish Journal</u> is located, published and principally
circulated in California and The Moscow Times in Russia, but
neither newspaper is a party to the action. Accordingly, their
locations are entitled to little weight. Zalmayev, however,
lives in New York. (7) The place of emanation is Russia for The
Moscow Times and Ponomarev and Alexeyeva; California for the
Jewish Journal; New York for Zalmayev, Freedom House and the
American Jewish Committee; and Washington, D.C. for the National
Council on Soviet Jewry. (8) The location of first reading was
Washington for the letters but is uncertain for the newspapers
because they are published online. (9) The law of the forum is
New York.

The Court should look to the state that has the greatest
interest in having its law control and should exercise its

11

discretion to select New York law.  <u>Condit</u>, 317 F. Supp.2d at 353
("New York . . . has an interest in regulating the conduct of
its media. [citation omitted] This interest remains even when
the target of the statement lives in another state.")  The one
unifying element for the five writings complained of in the
complaint is Zalmayev's alleged involvement in New York.  As
Zalmayev is the alleged generator of the opinions, New York has
a significant interest in having its law concerning the
protection of opinions control this case.  Plaintiff Egiazaryan
has selected New York as the forum.  For these reasons New York
law should control.[6]

**B.   New York Defamation Law Particularly Protects Opinion**

A published statement must be false and defamatory for
liability to exist, and with a public figure, actual malice must
exist.

> To succeed on a claim for defamation under
> New York, a plaintiff must prove that a published
> statement is both false and defamatory. [citation
> omitted] Ultimately, New York law requires a
> libel plaintiff to prove five elements: (1) a
> written defamatory statement of fact regarding
> the plaintiff; (2) published to a third party by
> the defendant; (3) defendant's fault, varying in
> degree depending on whether plaintiff is a
> private or public party; (4) falsity of the
> defamatory statement; and (5) injury to
> plaintiff. [citation omitted] . . .

---

[6] Should Egiazaryan seek and obtain the application of California law,
Zalmayev reserves the right to file a motion to strike the complaint
under California's anti-SLAPP law, Cal. Code of Civil Procedure
section 425.16.

> Where the plaintiff is a public figure, because of the First Amendment, more than these five elements is required.  The reason is simple: **"One of the prerogatives of American citizenship is the right to criticize public men and measures."** [citation omitted]  Thus the Supreme Court requires a public figure to prove, by clear and convincing evidence, that the defendant made the statements with "actual malice." [citation omitted]
>
> A statement is defamatory if it would "tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace." [citations omitted]

Stern v. Cosby, 645 F.Supp.2d 258, 271-72 (S.D.N.Y. 2011) (emphasis added).

Opinion cannot be false if the basis for the opinion is expressed, and there cannot be liability unless the opinion is based on published false facts.

> Since falsity is a sine qua non of a libel claim and since only assertions of fact are capable of being proven false, . . . a libel action cannot be maintained unless it is premised on published assertions of **fact.**

Brian v. Richardson, 660 N.E.2d 1126, 1129 (N.Y. 1995)(citations omitted)(emphasis in original).  Statements of pure opinion cannot support a defamation claim.  The central consideration is whether the statement is conventionally understood to be an opinion or is implying undisclosed, false and defamatory, facts.

13

The court must . . . decide as a matter of law whether the challenged statement is opinion. Rinaldi v. Holt, Rinehart & Winston, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, 1306 (1977) ("Whether a particular statement constitutes fact or opinion is a question of law."). Unlike the Federal Constitution, the New York Constitution provides for absolute protection of opinions. [citations omitted]

The "essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were . . . written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." Steinhilber v. Alphonse, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d 550, 552—53 (1986). If the statement reasonably would be understood as implying undisclosed facts then it is not protected opinion under New York's constitution. Id.; see also Mr. Chow of New York v. Ste. Jour Azur S.A., 759 F.2d 219, 224 (2d Cir.1985) ("[T]he inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an 'ordinary reader' of the statement." (emphasis added)).

The New York Court of Appeals has suggested a four factor test for differentiating statements of protected opinion from those asserting or implying actionable facts. See Immuno AG., 566 N.Y.S.2d 906, 567 N.E.2d at 1280. These are:

1) "an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous";

2) "a determination of whether the statement is capable of being objectively characterized as true or false";

3) "an examination of the full context of the communication in which the statement appears"; and

14

4)   "a consideration of the broader social
context or setting surrounding the communication
including the existence of any applicable customs
or conventions which might signal to readers or
listeners that what is being read or heard is
likely to be opinion, not fact."

Steinhilber, 508 N.Y.S.2d 901, 501 N.E.2d at 554
(internal quotation marks and citations omitted)
. . . Notably, the Steinhilber court was careful
to "eschew any attempt . . . to reduce the
problem of distinguishing fact from opinion to a
rigid set of criteria which can be universally
applied." Id.  The burden rests with the plaintiff
to establish that in the context of the entire
communication a disputed statement is not
protected opinion.

Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163,

178-79 (2d Cir. 2000).  This Court addressed the test for

highly protected opinion as follows:

If a statement of opinion implies that it is
based on facts that support the opinion, but are
unknown to persons reading or hearing it, the
statement is an actionable "mixed opinion."
[Steinhilber v. Alphonse, 68 N.Y.2d 283] at 289.
However, a statement of opinion made after a
recitation of facts disclosed to the reader or
listener, or not based on facts unknown to the
reader or listener, is not actionable.  Gross v.
New York Times Co., 82 N.Y.2d 146, 153 (1993).
"The essential task is to decide whether the
words complained of, considered in the context of
the entire communication and of the circumstances
in which they were spoken or written, may be
reasonably understood as implying the assertion
of undisclosed facts justifying the opinion."
Steinhilber, 68 N.Y.2d at 290.  "The question is
one of law for the court and one which must be
answered on the basis of what the average person
hearing or reading the communication would take
it to mean."  Id.  The plaintiff has the burden
"to establish that in the context of the entire

15

communication a disputed statement is not
protected opinion." <u>Celle</u>, 209 F.3d at 179.

<u>Donofrio-Ferrezza v. Nier</u>, 2005 WL 2312477, *6, 04-CV-1162 (Sept
21, 2005, S.D.N.Y. 2005)(Castel, J.)

    **C.   The Challenged Statements Are Not Libelous Because
They Contain True Statements of Fact and Opinions**

        **1.   Zalmayev's Article And The Basic "Dispute"**

Of particular importance is that Zalmayev did not write the
article or letters that are the subject of counts II through IV
and that the complaint alleges that Zalmayev talked to the
writers and that in those conversations he defamed Egiazaryan.
It is useful to start with what Zalmayev wrote, which is the
article attached to the complaint as exhibit A.

The gist of the article is that Egiazaryan has been a long
time member and financial backer of the LDPR, which is led by an
anti-Semite and that due to this association Egiazaryan should
be denied asylum.  The defense of truth "requires only that the
'gist or substance of the challenged statements be true,' not
that they be completely accurate." <u>Donofrio-Ferrezza v. Nier</u>,
2005 WL 2312477, *6, 04-CV-1162 (Sept 21, 2005, S.D.N.Y.
2005)(Castel, J.)(citing <u>Printers II, Inc. v. Prof'ls Publ'g,
Inc.</u>, 784 F.2d 141, 146 (2d Cir.1986).

Egiazaryan does not dispute that he is appointed to the
Duma by the LDPR and is a financial backer of the LDPR.
Egiazaryan's only factual "dispute" about the article is that he

is not a "member" of the party, by some definition (Comp. ¶
37.), but he does not even allege that he is a member of any
party other than the LDPR or is the Russian equivalent of an
American "Independent." Even if Egiazaryan were not a "member"
and only a financial backer and Duma representative of the LDPR,
he is still closely tied to the party. The article's assertion
that Egiazaryan is associated with the LDPR is true by any
interpretation. The LDPR's published list of its delegates in
the Duma identifies Egiazaryan as a "member" of the party.
Attached as exhibit 1 is the LDPR's member list (pages 1-3 of
19) and a translation of the headings and Egiazaryan entry (no.
6, page 2) is exhibit 2 (all translated passages circled).

Egiazaryan does not dispute that he is the subject of a
criminal prosecution in Russia (exhibit 3) but contends that it
is politically motivated.

The article contains opinions that the LDPR has contributed
to xenophobia in Russia, anti-Semitism continues to be a threat,
responsible people distance themselves from anti-Semites, and
that the United States government should not welcome anti-
Semites by granting Egiazaryan asylum.

> The Zhirinovsky-Egiazaryan party's racism and
> bigotry has contributed significantly to Russia's
> growing climate of ethnically based intolerance
> and xenophobia. Anti-Semitism remains pernicious
> and insidious, as the recent scandal with
> Christian Dior's John Galliano has demonstrated
> so vividly. The fashion label must be commended
> for the swiftness with which it condemned its

17

>            bigoted designer's rant and distanced itself from
>            him.  The U.S. government must likewise put anti-
>            Semites worldwide on notice: You are not welcome
>            in this country.

(Exhibit A to the compliant)

This is opinion.  The causes of intolerance and xenophobia and the proper response to anti-Semitism cannot be objectively characterized as true or false.  The proposition that responsible people distance themselves from anti-Semitism and that those who maintain associations with renowned anti-Semites should be criticized and denied asylum due to their association is an expression of pure opinion, and the opinion is based on the facts set forth above in the article—mostly Egiazaryan's membership in LDPR.  The opinion is more moderate and analytically explained than the highly protected opinion in Steinhilber v. Alphonse, 68 N.Y.2d 283, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986).

> **2.    Zalmayev Is Not Liable for Defamation For
>          Komarovsky's Article (Count II)**

Count II addressing Komarovsky's article in The Moscow Times should be dismissed as opinion and because Zalmayev did not write it.  Egiazaryan cannot bring a claim against Zalmayev by alleging that Zalmayev talked to Komarovsky and then attributing to Zalmayev what might be defamatory in Komarovsky's article, especially when here we have an article that contains Zalmayev's words, which are not defamatory.  To allow such a

claim would make every potential source for a potentially
defamatory article a potential defendant.  To be a defendant
under these circumstances, even when the defendant eventually
prevails, is already to lose and exactly the chilling effect
that federal and New York constitutional libel law has evolved
to prevent.  Counsel could find no case in which a person who
talked to a reporter was liable for defamation, or even a
defendant in a case structured like this one.

Beyond the implausible allegations that Zalmayev writes the
headlines for The Moscow Times and that Zalmayev is responsible
for Komarovsky's reporting about the callers to Komarovsky's
radio program in Boston, the challenged sentences are all
expressions of opinion supported by the facts set forth in the
article.  Claims based upon these allegations should be dismissed
under the pleading requirements of Bell Atlantic Corp. v.
Twombly, 127 S.Ct. 1955, 550 U.S. 544 (2007) and Ashcroft v.
Iqbal, 129 S. Ct. 1937 (2009), which require that a complaint
state a claim that is plausible and plead more than the
formulaic recitation of the elements of a claim.

### 3.   Zalmayev Is Not Liable for Defamation For the Letters (Counts III and IV)

The letters addressed in counts III and IV are not
libelous, and even if they might be libelous, Zalmayev cannot be
liable for his discussions with the writers of the letters.

The joint letters (court IV) by Freedom House, the American Jewish Committee and the National Council on Soviet Jewry opine that Egiazaryan's

> actions in Russia do not equate with American standards of sanctuary, and we do not believe his record qualifies him for a status generally conferred on those who have risked their own welfare for freedom, democracy and human rights.

>                          * * *

> We believe that in the case of Mr. Egiazaryan the United States government must once again demonstrate its intolerance for bigotry  by denying his bid for political asylum.

(Comp. Exhibit E.)

The letters set forth the factual basis for the opinions:

> Mr. Egiazaryan has for years been one of the leaders and a Duma representative of the Liberal Democratic Party of Russia (LDPR), which is known for its virulently anti-Semitic, anti-American and xenophobic views.  The party and its leader, Vladimir Zhirinovsky, have blamed Jews for many of Russia's and the world's ills, assigning them blame for "starting World War II," "provoking the Holocaust" and "orchestrating 9/11," just to name a few well-known assertions.  As major U.S. Jewish and human rights organizations, we have consistently condemned LDPR's message of hate, appealing to the U.S. public and policy-makers to boycott its leaders and preclude them from visiting — much less receiving asylum in — the United States.

(Comp. Exhibit E.)  There is ample factual basis for the opinions, and there is no asserting or hinting that the opinion is based on additional, undisclosed facts.

20

The complaint advances the absurd proposition that Jewish and human rights organizations cannot legally express the opinion that an individual, who represents an anti-Semitic party in Russia's legislature for twelve years, shares responsibility for the party's views.

The actual labeling of Egiazaryan as an anti-Semite - something neither Zalmayev's article nor the joint letters of Freedom House, the American Jewish Committee and the National Council on Soviet Jewry did — is also protected opinion anyway. One is entitled to express the opinion that someone who assists Zhirinovsky and the LDPR in their anti-Semitic agenda by serving as a Duma member and providing financial backing is himself an anti-Semite.  Buckley v. Littell, 539 F.2d 882, 894 (2d Cir. 1976)(description as "fellow traveler of fascism" non-libelous opinion); Carto v. Buckley, 649 F. Supp. 502 (S.D.N.Y. 1986)( assertion that a journal's "distinctive feature is racial and religious bigotry" non-libelous opinion); Sandals Resort Intern. Ltd. v. Google, Inc., 2011 WL 1885939, * 4-7 (Ap. Div. 1st Dept., May 19, 2011)(email allegation that Sandals discriminated against Jamaicans pure opinion); Greenbaum v. Google, Inc., 845 N.Y.S.2d 695, 700, 18 Misc.3d 185, 189-90 (Sup. Ct., N.Y.C. 2007)(assertion of religious bigotry based upon voting record pure opinion); New York Times Co. v. Sullivan, 376 U.S. 254, 272, 84 S.Ct. 710, 721-22 (1964)(citing with favor Sweeney v.

21

Patterson, 128 F.2d 457, 458 (D.C.Cir. 1942), holding that assertion of anti-Jewish bias in congressman's action non-defamatory opinion).

Count III, which concerns the letters of Ponomarev and Alexeyeva, should also be dismissed as opinion.  The letters differ from the other writings by focusing on Egiazaryan's role as a member of the Duma's Committee for Assistance in Political Regulation and Observance of Human Rights in Chechnya from 2000 through 2003.  Egiazaryan does not dispute that funds appropriated for Chechnya were diverted, that he was on the Committee (he says commission) or that the Committee was involved with overseeing disbursement of relief funds in Chechnya. (Comp. ¶ 59)  Assigning responsibility for maladministration is a matter of opinion and a matter upon which debate should be open.  The "retractions" (Comp. Exhibit D) are irrelevant.

### 4.    Zalmayev's Contact With The Article And Letter Writers Does Not Contain The Required Degree of Fault

The plaintiff must prove "defendant's fault, varying in degree depending on whether plaintiff is a private or public party." Stern v. Cosby, 645 F.Supp.2d 258, 272 (S.D.N.Y. 2011) The complaint repeatedly alleges that Zalmayev was negligent and therefore is liable for defamation. (Comp. ¶ 115, 125, 134 & 144).  These allegations fail to state a claim because Egiazaryan

is a limited public figure.  Egiazaryan's allegation that he is a
private figure does not bind the Court.  (Comp. ¶ 82).  <u>Bell
Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965, 550 U.S. 544,
555 (2007) (courts do not have to accept a legal conclusion as
true).

The American public interest in the business and
governmental failing of post-Communist Russia and its oligarchs
was discussed at length in <u>OAO Alfa Bank v. Center for Public
Integrity</u>, 387 F.Supp.2d 20 (D.C. D.C. 2005).  There two Russian
oligarchs unsuccessfully tried to silence an organization that
criticized their criminal activities by filing a defamation
action.  The court held that the plaintiffs, who did not hold
governmental office in Russia, were public figures.  As an
oligarch, Duma member, and subject to arrest and a "wanted"
notice by Interpol (exhibit 3), Egiazaryan is more so a public
figure.

Because Egiazaryan is a public figure, he must eventually
establish, and now plausibly allege, that Zalmayev acted with
actual malice by clear and convincing evidence.  <u>New York Times
Co. v. Sullivan</u>, 376 U.S. 254, 279-80, 84 S.Ct. 710 (1964),
<u>Celle v. Filipino Reporter Enterprises Inc.</u>, 209 F.3d 163, 176-
77 (2d Cir. 2000).  The allegation that Zalmayev controlled the
writings of others to induce them to make defamatory statements
is every bit as implausible as the allegations that the Attorney

General orchestrated Iqbal's treatment in the Metropolitan
Detention Center in Brooklyn.  There is no factual basis alleged
in the complaint to support the contention.  The simple
allegations of actual malice should be disregarded and cannot
satisfy Egiazaryan's obligation to plead facts supporting the
formulaic allegation of actual malice.  Harris v. Mills, 572 F.3d
66, 72 (2d Cir 2009).

> **D.   The Claim for Injurious Falsehood (Count V) Must be
> Dismissed Because No Business of Egiazaryan Is
> Involved**

Injurious falsehood is the same as trade libel and
"consists of the knowing publication of false matter derogatory
to the plaintiff's business of a kind calculated to prevent
others from dealing with the business or otherwise interfering
with its relations with others, to its detriment." Waste
Distillation Technology, Inc. v. Blasland & Bouck Engineers,
P.C., 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dept.
1988).  Henneberry v. Sumitomo Corp. of America, 415, F. Supp.2d
423, 470-71 (S.D.N.Y. 2006)  The complaint must plead special
damages of actual lost business.  Banco Popular North America v.
Leiberman, 75 A.D.3d 460, 462, 905 N.Y.S.2d 82, 85 (1st Dept.
2010)

This case has nothing to do with lost business, and
Egiazaryan has not pled that any of the challenged writings have
affect his business activities, or business damage.

Where the same facts are alleged to support injurious falsehood and defamation, the injurious falsehood claim should be dismissed as duplicative. Obrien v. Alexander, 898 F. Supp. 162, 172 (S.D.N.Y. 1995), aff'd in part and reversed in part on other grounds, 101 F.3d 1479,1488 (2d Cir. 1996); Conte V. Newsday Inc., 703 F. Supp.2d 126, 148 (E.D.N.Y. 2010).

**CONCLUSION**

Counts II through V should be dismissed.

Respectfully submitted


/s/ Andrew J Ryan
Andrew J. Ryan
Matthew P. Feser
SALISBURY & RYAN
1325 Avenue of the Americas, 7th Fl.
New York, NY  10019
212-977-4660
212-977-4668 (fax)
ar@salisburyryan.com
mf@salisburyryan.com


/s/ James P. Golden
JAMES P. GOLDEN
Pennsylvania I.D. No. 32169
Thomas B. Roberts (TR5233)
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103
215-255-8590 (O)
215-255-8583 (fax)
goldenjp@hamburg-golden.com


Attorneys for defendant
Peter Zalmayev

Dated:    June 20, 2011

25