UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ASHOT EGIAZARYAN,                             :
                                              :
                Plaintiff,        :   11 CV 02670 (PKC)
                                              :
     -against-                              :
                                              :
PETER ZALMAYEV,                               :
                                              :
                Defendant.        :
------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF MOTION
# TO DISMISS DEFENDANT'S COUNTERCLAIMS


**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**One Liberty Plaza**
**New York, New York  10006**
**(212) 412-9500**

*Attorneys for Plaintiff Ashot Egiazaryan*

## Table of Contents

Page(s)

Preliminary Statement ..................................................................................................................1

BACKGROUND ...........................................................................................................................2

    The Complaint.....................................................................................................................2

    Defendant's Answer and Counterclaims .............................................................................3

ARGUMENT .................................................................................................................................4

    POINT I    DEFENDANT'S COUNTERCLAIM FOR DEFAMATION FAILS
                TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED ....................4

        A.    Plaintiff's Alleged Distribution of the Complaint, Which Constitutes a
             "Fair and True" Report of a Judicial Proceeding, Is Statutorily Privileged ............5

        B.    Plaintiff's Counterclaims Fail to Satisfy Even the
             Most Rudimentary Requirements of Fed. R. Civ. P. 8 ............................................6

    POINT II    DEFENDANT'S COUNTERCLAIM PURSUANT TO NEW YORK
                CIVIL RIGHTS LAW §§ 70-a AND 76-a MUST BE DISMISSED .....................8

        A.    Mr. Egiazaryan Is Not a "Public Applicant or Permitee" ....................................10

        B.    Defendant Has Not Adequately Pled that Mr. Egiazaryan's Claim
             Against Defendant Is an "Action Involving Public Petition and Participation"....12

    POINT III    DEFENDANT'S PLEADING LEVELS SCANDALOUS ATTACKS ON
                 PLAINTIFF THAT ARE WHOLLY UNRELATED TO THE CLAIMS,
                 COUNTERCLAIMS OR DEFENSES IN THIS ACTION AND SHOULD
                 BE STRICKEN .....................................................................................................14

CONCLUSION ............................................................................................................................16

# Table of Authorities

**Cases**                                                                                                          **Page(s)**

*600 W. 115th Street Corp. v. Von Gutfeld*,
  80 N.Y.2d 130, 589 N.Y.S.2d 825 (1992)..................................................................................11

*Amar v. Hillcrest Jewish Center*,
  2009 WL 891795 (E.D.N.Y. Mar. 31, 2009).................................................................................7

*Aventis Envtl. Science USA LP v. Scotts Co.*,
  No. 99 Civ. 4015, 2003 WL 1787295 (S.D.N.Y. Apr. 3, 2003)................................................14

*Branca v. Mayesh*,
  101 A.D.2d 872, 476 N.Y.S.2d 187 (2d Dep't 1984),
  *aff'd*, 63 N.Y.2d 994 (1984)..........................................................................................................5

*Chandok v. Klessig*,
  632 F.3d 803 (2d Cir. 2011) ...................................................................................................11, 12

*Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*,
  2010 WL 1223590 (E.D.N.Y. Mar. 23, 2010)..............................................................................6

*Fishof v. Abady*,
  280 A.D.2d 417, 720 N.Y.S.2d 505 (1st Dep't 2001)...................................................................5

*Ford v. Levinson*,
  90 A.D.2d 464, 454 N.Y.S.2d 846 (1st Dep't 1982) ................................................................5, 6

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002).........................................................................................15

*Guerrero v. Carva*,
  10 A.D.3d 105, 779 N.Y.S.2d 12 (1st Dep't 2004) ..........................................................9, 12-13

*Harfenes v. Sea Gate Ass'n, Inc.*,
  167 Misc. 2d 647, 647 N.Y.S.2d 329 (Sup. Ct. N.Y. Co. 1995) .................................11, 12, 13

*Hariri v. Amper*,
  51 A.D.3d 146, 854 N.Y.S.2d 126 (1st Dep't 2008) ...................................................................9

*Lacher v. Engel*,
  33 A.D.3d 10, 817 N.Y.S.2d 37 (1st Dep't 2006) .......................................................................8

*McNally v. Yarnall*,
  764 F. Supp. 853 (S.D.N.Y. 1991)................................................................................................6

**Table of Authorities (cont'd)**

**Page(s)**

*Mehrhoff v. William Floyd Union Free School Dist.*,
  2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005) ................................................................. 7

*Metellus v. Jetblue Airways Corp.*,
  2010 WL 1267777 (E.D.N.Y. Mar. 30, 2010) ............................................................. 6-7

*Sexter & Warmflash, P.C. v. Margrabe*,
  38 A.D.3d 163, 828 N.Y.S.2d 315 (1st Dep't 2007) ..................................................... 8

*Silver v. Kuehbeck*,
  2005 WL 2990642 (S.D.N.Y. Nov. 7, 2005),
  *aff'd*, 2007 WL 559960 (2d Cir. Feb. 8, 2007) ............................................................. 5

*The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*,
  413 F. Supp 555 (S.D.N.Y. 1976) .................................................................................. 6

*Toto v. McMahan, Brafman, Morgan & Co.*,
  No. 93 Civ. 5894, 1995 WL 46691 (S.D.N.Y. Feb. 7, 1995) ...................................... 15

**Statutes**

8 C.F.R. § 208.6 ............................................................................................................ 11, 13, 14

CPLR 3016 ............................................................................................................................... 6

Fed. R. Civ. P. 8 .................................................................................................................... 6, 8

Fed. R. Civ. P. 12(f) ........................................................................................................... 14, 15

*N.Y. Statutes* § 239 (2011) ..................................................................................................... 10

New York Civil Rights Law § 70-a ................................................................................. passim

New York Civil Rights Law § 74 ........................................................................................ 5, 6

New York Civil Rights Law § 76-a ................................................................................. passim

**Miscellaneous**

*Memorandum by Joseph E. Langlois*, U.S. Department of Homeland Security,
  U.S. Citizenship and Immigration Services, June 15, 2005 ................................... 13, 14

Moore's Manual: Federal Practice and Procedure § 11.28[2] (2011) ................................... 15

**PRELIMINARY STATEMENT**

Plaintiff Ashot Egiazaryan respectfully submits this memorandum of law in support of his motion to dismiss defendant's counterclaims and for other, related relief.

After engaging in a campaign involving public and private defamatory statements and behind-the-scenes manipulations -- actions that, to a large extent, have now been conceded in his Answer -- defendant Peter Zalmayev has added insult to injury by suing Mr. Egiazaryan, the victim of Mr. Zalmayev's targeted smear campaign, for doing nothing more than trying to defend his tarnished reputation. Defendant's retaliatory counterclaims assert that the mere commencement of plaintiff's action for defamation and distribution of the publically-filed complaint render Mr. Egiazaryan liable to Mr. Zalmayev. Plaintiff moves to dismiss Mr. Zalmayev's counterclaims because they have no merit as a matter of law.

Defendant's first counterclaim, alleging defamation, must be dismissed because the purported defamatory communications consist exclusively of: (1) the distribution of the complaint in this action to third parties, which cannot form the basis of a defamation claim by virtue of broad and absolute statutory and common law grants of immunity; and (2) statements ostensibly attributable to Mr. Egiazaryan and made to unidentified third parties, the contents of which are never described. These statements, which Mr. Zalmayev only "believes" to have been made, are vague and ill-described, and fail to provide Mr. Egiazaryan with even the most basic information required by the Federal Rules of Civil Procedure so as to permit him to formulate a defense.

Defendant's second counterclaim, alleging that plaintiff's complaint in this action is a vexatious or malicious SLAPP (Strategic Lawsuit Against Public Participation) suit pursuant to New York Civil Rights Law §§ 70-a and 76-a, must be dismissed because the protections of the anti-SLAPP statute may be invoked under very limited circumstances that are not present here --

*i.e.*, where a lawsuit is brought against a party that has directly challenged a public request for use or permission to act from the government, such as a request for a land use permit or a zoning change. Mr. Egiazaryan has not made a governmental request for use or permission to act, and Mr. Zalmayev has not directly challenged any such request.

Although the counterclaims should be dismissed, were the Court to permit them to proceed through discovery, the Court should strike paragraphs 23, 25-28 and 31-32 of defendant's counterclaims. These paragraphs amount to nothing more than scurrilous and gratuitous attacks upon Mr. Egiazaryan, which are wholly unrelated to the claims, counterclaims or defenses in this action. The only conceivable purpose for including these allegations is to malign further Mr. Egiazaryan's reputation and improperly expand the scope of discovery. They also demean the dignity of this Court.

## BACKGROUND

### The Complaint

The facts that gave rise to plaintiff's action and led to defendant's counterclaims are set forth in detail in plaintiff's April 19, 2011 complaint.[1] Briefly, they are as follows:

This is an action brought by Mr. Egiazaryan, a member of the Russian legislature. The complaint alleges that Mr. Zalmayev has participated in a malicious disinformation campaign against Mr. Egiazaryan that is part of an illegal Russian "corporate raid" and the byproduct of Mr. Egiazaryan's fall into political disfavor in Russia. After challenging the illegal raid through litigation and arbitration in Cyprus and the United Kingdom, Mr. Egiazaryan and his family have not been able to return to Russia from the United States out of concern for their personal safety;

---

[1] A copy of plaintiff's April 19, 2011 complaint ("Complaint"), and its accompanying exhibits, are attached collectively as Exhibit 1 to the Declaration of Jonathan D. Lupkin, executed on August 31, 2011 ("Lupkin Decl.").

indeed, one of Mr. Egiazaryan's close relative has already been murdered after declining to "cooperate" with Mr. Egiazaryan's opponents.  Complaint, ¶¶ 18, 20-81, 101-153.

Mr. Zalmayev has played a key role in the campaign against Mr. Egiazaryan through his participation in an elaborate, negative public relations and lobbying effort, designed specifically to paint Mr. Egiazaryan as a despicable human being who does not deserve to remain in this country.  To further these illegitimate efforts, Mr. Zalmayev has communicated false, defamatory and injurious statements to prominent individuals, including noted human rights advocates Lev Ponomarev and Lyudmila Alexeyeva, and written an article for a prominent Jewish magazine stating that plaintiff is, among other things:  (1) anti-Semitic, (2) anti-American, (3) a leader of an ultra-nationalist party in Russia associated with anti-Semitism, anti-Americanism, Holocaust denial, and that blames the Jews for sparking the Russian revolution, World War II, and 9/11, (4) a significant contributor to a climate of ethnically-based intolerance and xenophobia in Russia, (5) a human rights violator, and (6) a corrupt Russian legislator who has embezzled funds intended for war-torn Chechnya.  The campaign against Mr. Egiazaryan is intended to force him to return to Russia, where he and his family will be subject to loss of life and liberty, and to coerce him to abandon his legal claims relating to the illegal Russian "corporate raid."  Complaint, ¶¶ 1-3, 9-19.

**Defendant's Answer and Counterclaims**

Defendant answered the complaint on August 5, 2011[2] and, in so doing, *admitted* several of the critical allegations in the complaint.  Perhaps most significant are Mr. Zalmayev's concessions that he had "written and collaborated with others to oppose Mr. Egiazaryan's continued presence in the United States" (Answer, ¶ 18), that, in particular, he "collaborated with

---

[2] A copy of defendant's amended Answer to Count I, Affirmative Defenses, and Counterclaim, dated August 5, 2011, is attached as Exhibit 2 to the Lupkin Decl.

Mr. Ponomarev and Ms. Alexeyeva in preparing the letters [that plaintiff alleges are false, defamatory and injurious]" (Answer, ¶ 61), and that the explicit purpose for focusing attention on Mr. Egiazaryan's alleged membership in the Liberal Democratic Party of Russia was to "demonstrate[ his] support for bigoted, anti-Semitic, and anti-American policies" (Answer, ¶¶ 36, 48).

Defendant's responsive pleading also interposed two counterclaims. Premised upon the filing of the present action, the counterclaims assert claims for defamation and the violation of *Civil Rights Law* §§ 70-a and 76-a (New York's anti-SLAPP legislation). Both counterclaims should be dismissed.

## ARGUMENT

### POINT I

### DEFENDANT'S COUNTERCLAIM FOR DEFAMATION FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

Defendant's first counterclaim asserts that Mr. Egiazaryan is liable for defamation because he or his unidentified representatives: (1) shared the complaint in this action with one (and possibly more) third parties[3]; and (2) may have made unspecified defamatory statements to Mr. Ponomarev, Ms. Alexeyeva and other, unspecified people at unspecified times.

---

[3] The counterclaims allege only one specific instance involving the alleged dissemination of the complaint. The pleading recounts a call received by Mr. Zalmayev from a reporter at the *Moscow Times* on June 9, 2011 (over seven weeks after the complaint had been publically filed) in which the reporter claimed to have a copy of Mr. Egiazaryan's complaint. Although Mr. Zalmayev's counterclaims concede that the reporter refused to disclose the source of the complaint, Mr. Zalmayev nevertheless claims that the "only logical inference" is that the reporter received the complaint from an unidentified representative of Mr. Egiazaryan (as opposed to simply downloading the document from PACER, the United States Court's electronic docketing system). Counterclaim, ¶ 46. As to others to whom Mr. Egiazaryan allegedly disseminated the complaint, the counterclaims offer no specifics whatsoever; they merely reflect Mr. Zalmayev's conjecture that other unidentified representatives of Mr. Egiazaryan may have sent the Complaint to unidentified others. *Id.* ("From Mr. Egiazaryan's use of lawyers, consultants and public relations professionals (complaint ¶ 98), Mr. Zalmayev believes that the complaint was widely circulated.").

- 4 -

### A. Plaintiff's Alleged Distribution of the Complaint, Which Constitutes a "Fair and True" Report of a Judicial Proceeding, Is Statutorily Privileged

Even if Mr. Egiazaryan or his representatives had distributed one or more copies of the complaint, the dissemination of a pleading to third parties is absolutely privileged as a matter of New York law. New York Civil Rights Law § 74, entitled "Privileges in action for libel," provides, in pertinent part, that:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . .

Also known as the "Fair Reporting Privilege," § 74 has been interpreted expansively by the Courts. As noted by New York's Appellate Division: "While statutory predecessors to § 74 limited the privilege to members of the media who acted without malice, the privilege now extends to 'any person,' whether or not he acts with malice." *See Branca v. Mayesh*, 101 A.D.2d 872, 873, 476 N.Y.S.2d 187, 188 (2d Dep't 1984), *aff'd*, 63 N.Y.2d 994 (1984). To be protected under the statute, a "fair and true report" need only be "substantially accurate;" it need not quote the judicial proceedings *verbatim,* so long as the report "does not produce a different effect on a reader than would a report containing the precise truth." *Silver v. Kuehbeck*, 2005 WL 2990642, at *16 (S.D.N.Y. Nov. 7, 2005), *aff'd*, 2007 WL 559960 (2d Cir. Feb. 8, 2007); *see also Ford v. Levinson*, 90 A.D.2d 464, 454 N.Y.S.2d 846 (1st Dep't 1982). Finally, § 74 protects not only a transcript of judicial proceeding, but pleadings submitted in connection with those proceedings. *Branca,* 101 A.D.2d at 873, 476 N.Y.S.2d at 188.

Consistent with its expansive scope, Civil Rights Law § 74 has been held explicitly to immunize the precise conduct that forms the basis of defendant's counterclaim for defamation -- dissemination of a complaint -- and to afford absolute protection for such conduct *even if* the dissemination has been made to the press by a party to the litigation or his attorney. *See, e.g., Fishof v. Abady,* 280 A.D.2d 417, 720 N.Y.S.2d 505 (1st Dep't 2001) (immunizing circulation of

- 5 -

pleading to press); *Ford v. Levinson*, 90 A.D.2d 464, 454 N.Y.S.2d 846 (1st Dep't 1982) (immunizing statement made by attorney to press summarizing pending litigation); *see also McNally v. Yarnall*, 764 F. Supp. 853 (S.D.N.Y. 1991) (attorney's description of substance of complaint to reporter protected under Civil Rights Law § 74); *The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F. Supp 555, 561 (S.D.N.Y. 1976) (same).

In view of the broad protection afforded by Civil Rights Law § 74, Mr. Zalmayev's defamation claim must be dismissed. Regardless of whether Mr. Egiazaryan or his representatives disseminated the complaint to third parties or whether one of those third parties happened to be a member of the press, New York law protects the distribution of the pleading with absolute immunity.

    **B.**    **Plaintiff's Counterclaims Fail to Satisfy Even the Most Rudimentary Requirements of Fed. R. Civ. P. 8**

Mr. Zalmayev's defamation claim must fail for an additional reason. The allegations pertaining to this claim are vague and speculative and, thus, provide insufficient detail to support a claim for relief.

Because Mr. Zalmayev's defamation counterclaim has been interposed in a federal lawsuit, the claim is not subject to the strict particularity requirements for the pleading defamation under CPLR 3016. But even basic "notice pleading," as contemplated by Rule 8 of the Federal Rules of Civil Procedure, does not permit a party to prosecute defamation claims that are skeletal, vague, and speculative. The minimally sufficient pleading must "afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Edward B. Beharry & Co., Ltd. v. Bedessee Imports Inc.*, 2010 WL 1223590, at *5 (E.D.N.Y. Mar. 23, 2010) (quotations and citations omitted).

Especially with regard to a defamation claim, if the pleading fails to satisfy this most basic requirement, it is insufficient and must be dismissed. *See, e.g., Metellus v. Jetblue Airways*

*Corp.*, 2010 WL 1267777, at *7 (E.D.N.Y. Mar. 30, 2010) (dismissing defamation claim under Rule 8 because complaint did not identify "the person who made [the defamatory statement] or to whom, specifically, it was communicated."); *Amar v. Hillcrest Jewish Center*, 2009 WL 891795, *7 (E.D.N.Y. Mar. 31, 2009) (dismissing defamation claim under Rule 8 because pleading failed to specify "the approximate date of any statement that was allegedly made, who in particular made the statement and to whom, or any description whatsoever of the statements that were made."); *Mehrhoff v. William Floyd Union Free School Dist.*, 2005 WL 2077292, *11 (E.D.N.Y. Aug. 22, 2005) (same).

Of the 61 paragraphs that comprise his counterclaims, Mr. Zalmayev devotes only four to setting forth the allegations relating to his defamation claims. The salient portions of those paragraphs are:

- Paragraph 36 – "On the basis of Mr. Ponomarev's "retraction", Mr. Zalmayev believes that Mr. Egiazaryan's representatives made defamatory statements about Mr. Zalmayev such as those contained in the complaint."

- Paragraph 37 – "Mr. Zalmayev believes that Mr. Egiazaryan's representatives similarly visited Ms. Alexeyeva, made similar statements to her and pressured her, and made defamatory statements about Mr. Zalmayev such as those contained in the complaint."

- Paragraph 39 – "Mr. Zalmayev believes that Mr. Egiazaryan's representatives made defamatory statements about Mr. Zalmayev people [sic] in addition to Mr. Ponomarev and Ms. Alexeyeva."

- Paragraph 46 – "Moscow Times reporter Nikolaus von Twickel called Mr. Zalmayev on June 9, 2011, about an article he was writing about Mr. Egiazaryan, and said that he received the complaint in this case. He did not say who sent the complaint to him, but the only logical inference is that it was sent by Mr. Egiazaryan's representatives. From Mr. Egiazaryan's use of lawyers, consultants and public relations professionals (complaint ¶ 98), Mr. Zalmayev believes that the complaint was widely circulated."

The inadequacy of these allegations is self-evident. Assertions as to what Mr. Zalmayev "believes," based on his own speculation and surmise, without stating by whom and to whom the defamatory statements were made, what defamatory statements were made, when the defamatory

- 7 -

statements were made or in what context defamatory statements were made, do not establish a viable defamation claim even under the "notice pleading" requirements of Rule 8.[4]

## POINT II

### DEFENDANT'S COUNTERCLAIM PURSUANT TO NEW YORK CIVIL RIGHTS LAW §§ 70-a AND 76-a MUST BE DISMISSED

Mr. Zalmayev's strained effort to fashion a counterclaim that fits the requirements of an anti-SLAPP suit pursuant to New York Civil Rights Law §§ 70-a and 76-a falls flat. He erroneously contends that Mr. Egiazaryan's lawsuit against him is a SLAPP (Strategic Lawsuit Against Public Participation) suit because "Mr. Egiazaryan's application for asylum makes him a 'public applicant or permittee' [within the meaning of the anti-SLAPP statute]" and because of Mr. Zalmayev's alleged "engage[ment] in public petition and participation [within the meaning of the anti-SLAPP statute] regarding Mr. Egiazaryan's application for asylum." Counterclaim, ¶¶ 55-56.[5]

---

[4] As noted *supra*, the counterclaims are so vague and speculative as to render it impossible to determine what allegedly defamatory statements were made and to whom. To the extent that the so-called defamatory statements were made to third parties and bore some connection to the prosecution or defense of this litigation, the statements would be independently and absolutely protected by New York's common law litigation privilege. The litigation privilege provides absolute immunity not only to statements made in the courthouse, but also to "all pertinent communications among the parties, counsel, witnesses and the court. Whether . . . made orally or in writing." *Sexter & Warmflash, P.C. v. Margrabe*, 38 A.D.3d 163, 170-78, 828 N.Y.S.2d 315, 322-28 (1st Dep't 2007); *see also Lacher v. Engel*, 33 A.D.3d 10, 817 N.Y.S.2d 37 (1st Dep't 2006). That which constitutes a statement that is "pertinent" to a litigation has been viewed expansively and covers "anything that may possibly be pertinent or which has enough appearance of connection with the case." *Lacher*, 33 A.D.3d at 14, 817 N.Y.S.2d at 41.

Applied to his counterclaims, to the extent that Mr. Zalmayev seeks to hold Mr. Egiazaryan liable for statements to third parties that are pertinent to the litigation, including statements to potential witness, such statements would be absolutely immune from defamation claims under New York's litigation privilege as well.

[5] Although to assess the viability of Mr. Zalmayev's counterclaim, the Court must assume as true the allegation that Mr. Egiazaryan has filed a claim for asylum, strict confidentiality rules govern both the contents and even the very fact of whether an asylum application has been made. *See infra*. Accordingly, Mr. Egiazaryan neither admits nor denies that he has filed any application for asylum. Moreover, whether or not Mr. Egiazaryan has filed a confidential

- 8 -

New York Civil Rights Law §§ 70-a and 76-a, which codify this state's anti-SLAPP legislation, provide, in pertinent part, as follows:

- "A defendant in an action involving <u>public petition and participation</u>, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action. . . . . *N.Y. Civil Rights Law* § 70-a(1) (emphasis added)."

- "An 'action involving public petition and participation' is an action, claim, cross claim or counterclaim for damages that is brought by a <u>public applicant or permitee</u>, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." *N.Y. Civil Rights Law* § 76-a(1)(a) (emphasis added).

- "'Public applicant or permitee' shall mean any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body . . . ." *N.Y. Civil Rights Law* § 76-a(1)(b).

According to New York's Appellate Division, the "anti-SLAPP law is in derogation of the common law and must be strictly construed." *Hariri v. Amper*, 51 A.D.3d 146, 151, 854 N.Y.S.2d 126, 130 (1st Dep't 2008); *Guerrero v. Carva*, 10 A.D.3d 105, 117, 779 N.Y.S.2d 12, 21 (1st Dep't 2004). In keeping with this mandate, Mr. Zalmayev's claim must fail because it does not satisfy the statutory criteria for such a claim. More specifically, even if Mr. Egiazaryan has filed an asylum application -- and he neither concedes nor denies that he has -- such a filing does not make Mr. Egiazaryan a "public applicant or permitee." Moreover, Mr. Egiazaryan's commencement and prosecution of his defamation claim against Mr. Zalmayev does not transform Mr. Zalmayev into a proper claimant under the anti-SLAPP law; Mr. Zalmayev has not been involved in "public petition and participation" within the meaning of the statute.

---

asylum application is irrelevant to his affirmative claims, and Mr. Zalmayev cannot use his claim under the anti-SLAPP statute to manufacture relevance.

- 9 -

### A. Mr. Egiazaryan Is Not a "Public Applicant or Permitee"

To sustain his claim, Mr. Zalmayev must establish that plaintiff is a "public applicant or permitee" within the meaning of New York's anti-SLAPP law, which, as noted above, is defined as "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or *other entitlement for use or permission to act* from any governmental body." *Civil Rights Law* § 76-a(1)(b) (emphasis added).

The statute provides no basis from which to conclude that an individual who seeks asylum is a "public applicant or permitee." To reach this conclusion, one need only apply the interpretive maxim *ejusdem generis*, meaning "of the same kind," which has explicitly been codified by the legislature for use in the construction of New York statutes.[6] *Ejusdem generis* requires that applications falling within the parameter of the anti-SLAPP law must be "of the same kind" as a "permit, zoning change, lease, license, certificate or other entitlement for use or permission to act." An asylum application does not qualify under this definition because it neither seeks a permit or application to "use" anything, nor does it seek "permission [for the applicant] to act;" it merely seeks protection in the United States for any of the reasons set forth in the federal asylum legislation.[7]

The articulated purpose behind New York's anti-SLAPP statute further bolsters the conclusion that Mr. Egiazaryan is not a "public applicant or permitee." The Second Circuit

---

[6] *See N.Y. Statutes* § 239 (2011) ("Where a statute enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated.").

[7] Asylum is a "form of protection," as defined by the U.S. Citizenship and Immigration Services of the Department of Homeland Security. The Merriam-Webster Dictionary (2011) defines asylum as "the protection or inviolability afforded by an asylum" or the "protection from arrest and extradition given especially to political refugees by a nation or by an embassy or other agency enjoying diplomatic immunity."

Court of Appeals has expressly recognized that the anti-SLAPP statute was enacted due to a "rising concern about the use of civil litigation . . . to intimidate or silence those who speak out at *public meetings* against proposed *land use development* and other activities requiring approval of *public boards*" (*Chandok v. Klessig*, 632 F.3d 803, 818 (2d Cir. 2011) (quoting *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 138 n.1, 589 N.Y.S.2d 825, 828 n.1 (1992)) (emphasis added)), and that is was "'specifically designed to protect those citizens who, usually before a government agency, publicly *challenge applications by developers or other businesses for environmental and land use permits, leases, licenses or other approvals.*'" *Chandok*, 632 F.3d at 819 (quoting *Harfenes v. Sea Gate Ass'n, Inc.*, 167 Misc. 2d 647, 650, 647 N.Y.S.2d 329, 331 (Sup. Ct. N.Y. Co. 1995) (emphasis in original).

Reasoning from the statute's purpose, an asylum application is not the type of application that the New York legislature contemplated when enacting the anti-SLAPP statute. As set forth more fully below, information concerning asylum applications, including whether or not an application was filed in the first place, is confidential and may not be disclosed to a third-party without the alleged applicant's written authorization, or under certain limited circumstances that are inapplicable here. 8 C.F.R. § 208.6 (2011). This cloak of confidentiality completely removes asylum applications from the category of conduct that concerned the New York legislature when it enacted the anti-SLAPP statute – a *public* applicant's retaliation for *public* speech and expression with respect to *public* applications.

Finally, courts that have considered the viability of anti-SLAPP lawsuits have applied the statute in the same restrictive manner set forth above, further supporting the conclusion that an asylum applicant is not a "public applicant or permitee." The 2011 decision by the Second Circuit in *Chandok v. Klessig* is but one illustration of how not every application made to the government renders the applicant a "public applicant or permitee." In *Chandok*, the Court of

Appeals affirmed the dismissal of an anti-SLAPP lawsuit, reasoning that the defendant in that suit, an applicant for federal funding, was not a "public applicant or permitee" because he did not seek "an entitlement for use" or seek leave from the government for "permission to act." *Chandok*, 632 F.3d at 818-19; *accord Harfenes*, 167 Misc. 2d at 652-53, 647 N.Y.S.2d at 333 (dismissing anti-SLAPP suit because application for a loan from the United States Small Business Administration was "not an application for an 'entitlement for use or permission to act from [a] governmental body'"). In fact, our research has failed to identify any reported case anywhere in the United States (much less New York) in which a court permitted an anti-SLAPP suit premised upon an asylum application.

To summarize, even assuming that Mr. Egiazaryan has applied for asylum (and we make no concession in that regard), the application would not qualify Mr. Egiazaryan as a "public applicant or permitee" within the meaning of New York's anti-SLAPP law.

### B. Defendant Has Not Adequately Pled that Mr. Egiazaryan's Claim Against Defendant Is an "Action Involving Public Petition and Participation"

Even if Mr. Egiazaryan were a "public applicant or permitee" -- which he is not -- defendant's anti-SLAPP counterclaim should still be dismissed because Mr. Egiazaryan's lawsuit against Mr. Zalmayev is not an "action involving public petition and participation." Mr. Zalmayev has not and cannot plead that he directly challenged an application made by Mr. Egiazaryan.

As set forth in Civil Rights Law § 76-a(1)(a), an "action involving public petition and participation" is an action "for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." The "narrow construction of the anti-SLAPP law requires that a SLAPP-suit defendant . . . *directly challenge* an application or permission in order to establish a cause of action under the Civil Rights Law." *Guerrero*, 10 A.D.3d at 117, 779

N.Y.S.2d at 21 (emphasis added); *see also Harfenes*, 167 Misc. 2d at 653, 647 N.Y.S.2d at 333 (dismissing anti-SLAPP suit because anti-SLAPP suit plaintiffs did not "*directly challenge* a license or permit application" which was necessary to establish a cause of action under Civil Rights Law § 70-a) (emphasis added).

Although Mr. Zalmayev claims to have "engaged in public petition and participation regarding Mr. Egiazaryan's [alleged] application for asylum" (Counterclaim, ¶ 56), defendant offers no facts or details to substantiate his claim. In fact, nowhere in Mr. Egiazaryan's complaint or defendant's Answer (including his counterclaims) are there any allegations establishing that defendant *directly* and publicly challenged an alleged asylum application to the U.S. Citizenship and Immigration Services of the Department of Homeland Security.

And even if defendant had alleged facts purporting to demonstrate his direct challenge of an asylum application, the allegations would not be plausible because no procedure exists for the public to comment on or oppose asylum applications. Asylum applications are not public records or public events. To the contrary, asylum applications are protected by an extensive confidentiality regime set forth by federal regulation. *See* 8 C.F.R. §§ 208.6(a)-(b). The government must ensure that confidentiality is preserved with respect to any information concerning "the fact that the applicant has applied for asylum[,] specific facts or allegations pertaining to the individual asylum claim contained in an asylum application[, and] facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum." *Memorandum by Joseph E. Langlois*, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, June 15, 2005, http://www.uscis.gov/files/pressrelease/FctSheetConf061505.pdf.

Given these confidentiality requirements, and given that the very existence and nature of an asylum application is confidential, defendant could not have directly and publicly challenged

- 13 -

any asylum application. Unlike, for example, an application for a zoning change, there is no legal mechanism available to allow defendant, or any other member of the general public, to directly and publicly challenge a confidential asylum application.[8] Therefore, because defendant has not and cannot allege that he directly challenged Mr. Egiazaryan's purported asylum application, Mr. Zalmayev's anti-SLAPP counterclaim must be dismissed for this additional reason.

## POINT III

### DEFENDANT'S PLEADING LEVELS SCANDALOUS ATTACKS ON PLAINTIFF THAT ARE WHOLLY UNRELATED TO THE CLAIMS, COUNTERCLAIMS OR DEFENSES IN THIS ACTION AND SHOULD BE STRICKEN

In the event that Mr. Zalmayev's counterclaims are permitted to proceed, plaintiff moves, pursuant to Fed. R. Civ. P. 12(f), to strike paragraphs 23, 25-28 and 31-32 from the counterclaims. These allegations are scandalous, have no relevance to any of the claims, defenses or counterclaims in this action, have been asserted solely to malign Mr. Egiazaryan and are calculated to prejudice plaintiff by their presence in a pleading and by establishing a pretext for Mr. Zalmayev to harass Mr. Egiazaryan and his family during discovery.

Rule 12(f) of the Federal Rules of Civil Procedures permits this Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "Allegations may be stricken where they have no bearing on the parties' claims or defenses, will likely be prejudicial, or where they have criminal overtones." *Aventis Envtl. Science USA LP v. Scotts Co.*, No. 99 Civ. 4015, 2003 WL 1787295, at *2 (S.D.N.Y. Apr. 3, 2003) (striking material from

---

[8] If defendant were to learn of the existence of an asylum application, he would be "bound by the confidentiality regulations under 8 CFR 208.6" and would be unable "to disclose the asylum-related information to other parties." *Memorandum by Joseph E. Langlois*, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, June 15, 2005. In that circumstance, defendant's unauthorized disclosure of Mr. Egiazaryan's alleged asylum application to the press, members of Congress or even this Court, would violate federal regulations. *See* 8 C.F.R. § 208.6(c)(2).

- 14 -

counterclaim because when "placed in the context," the stricken allegations suggested fraudulent behavior on the part of plaintiff, and the allegations were "not necessary to establish any element of the claims pled" by defendant); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 554 (S.D.N.Y. 2002) (same standard); *Toto v. McMahan, Brafman, Morgan & Co.*, No. 93 Civ. 5894, 1995 WL 46691, at *16-17 (S.D.N.Y. Feb. 7, 1995) (same; striking allegations of criminal tax fraud as immaterial, impertinent and scandalous, and prejudicial to movant). *See also* Moore's Manual:  Federal Practice and Procedure § 11.28[2], at 11-39 (2011) ("'Scandalous' means an allegation that unnecessarily reflects on the moral character of an individual or states anything in offensive language that detracts from the dignity of the court.").

Because of the scandalous nature of counterclaim paragraphs 23, 25-28 and 31-32, plaintiff does not wish to broadcast them further and therefore declines to republish them in this memorandum.  We respectfully submit that upon review of the allegations, though, the Court will conclude that they satisfy all of the criteria to warrant striking allegations from a pleading under Rule 12(f).

Not only is Mr. Egiazaryan prejudiced by the mere existence of the offending allegations, but it is critical to put reasonable limits on the scope of Mr. Zalmayev's discovery.  Mr. Zalmayev should not be permitted to utilize salacious and irrelevant allegations in his pleading as a pretext to harass plaintiff and members of his family during discovery.  There is ample reason to believe that he will do so; two of Mr. Egiazaryan's family members have already been subpoenaed to testify.

**CONCLUSION**

For the foregoing reasons, defendant's counterclaims should be dismissed.

Dated:  New York, New York
        August 31, 2011

        FLEMMING ZULACK
           WILLIAMSON ZAUDERER LLP

By:_____/s/_____
    Mark C. Zauderer
    Jonathan D. Lupkin
    Jason T. Cohen

One Liberty Plaza
New York, New York 10006
(212) 412-9500

*Attorneys for Plaintiff Ashot Egiazaryan*