

# BLOOMFIELD ASSOCIATES, INC.

13712 Wagon Way
Silver Spring, MD 20906
301/460-3285 Fax 301/460-4187
DMB@his.com

DOUGLAS M. BLOOMFIELD, PRESIDENT

February 7, 2011

## Proposal

Goal: Remove Ashot Yegiazaryan from the United States.

**Strategy**

Congressional and media pressure on the Obama administration seeking one or more of the following outcomes:

1. Deny refugee status
2. Put him on the State/Justice departments' Watch Lit
3. Have him deported
4. Have him voluntarily leave the United States

**Role of Bloomfield Associates**

1. Develop strategy and tactics for carrying it out.
2. Prepare necessary background materials
3. Draft documents to carry out the strategy
4. Organize a bipartisan Congressional letter to highest level officials of the Obama administration opposing his (reported) request for refugee status, noting he is not here for political freedom but to escape criminal prosecution for acts that would be crimes in the United States or any other free country.
5. Coordinate and assist in efforts to secure sponsorship, guide follow up, be available to consult on all aspects of the project and provide guidance and aid as needed.
6. Identify Members of Congress and other players who could be most helpful to the project.
7. Develop and define additional initiatives.
8. Seek out others with an interest in furthering this goal

**Note to Rinat**

1. In light of Ashot's connections to Zhirinovsky, we should look into possible help in the Jewish community.
2. Also give special attention to the Los Angeles area where he should be considered an unwelcome guest.
3. This should take 4-6 weeks, depending on congressional recess schedule and cooperation from those who would be circulating the letters.

BA 00501

To: <u>RA</u>
From: <u>Zhanna Snelbecker</u>
Immigration Attorney, zsnelbecker@nilg-dc.com; (202) 487 8438
Date: <u>February 07, 2011</u>
Re: <u>Ashot Yeghiazaryan/Immigration Fraud/Visa Revocation/SS Questions/Asylum</u>

**Facts:** Ashot Yeghiazaryan, a former Russian State Duma deputy from the Liberal Democratic Party of Russia, entered the US on a diplomatic passport and is thinking about seeking asylum in the US. The applicant is a life-long Russian citizen of Armenian descent. It is presumed that he is currently residing in Los Angeles area and is accompanied by his wife and 4 children. The applicant is presumably in the US on a diplomatic visa A-1 (A-2 for dependents), but for his most recent entry into the US, he has not entered on Russian official government business.

**Missing Data:** copy of the bio page of the diplomatic passport; copy of the US visa stamp; copies of I-94 Arrival Record card for each family member, front and back (white card stapled to the passport of each foreigner upon entry into the US; governs the type and length of authorized legal stay); existence of any history of arrests and criminal records in Russia; the dates of 3-4 most recent entries to the US immediately preceding to this entry.

**Mass Media Confusion with SS number and Imputed Green Card Status:** there is information in various media resources that Ashot Yeghiazaryan has a US Social Security number. The fact that he has it is somehow attributed to him being a permanent resident of the United States, and to him possibly filing his personal income taxes in the US as a resident. In fact, his SS number, his tax filing status as US resident, and his immigration permanent residency status are only very loosely connected. If the reported SS number - 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 – is correct (it appears to be), it is possible to track the place and approximate year of the SS application that led to the issuance of the SS number. (Please note SS application for the initial SS number must always be completed in person.) The Social Security number above was issued by a SSA in Washington, DC, between 1989 and 1992. Back then (unlike now), it was very simple to receive a SS number even for people on short-term visas (such as B-1 Business visas or short-term F-1 student visas). It would have been sufficient, for example, to produce a letter

1

from a reputable bank to the SS administration office, indicating that a SS number is needed to open a bank account and the SS number would have been issued (progressively, SSA rules became stricter and as of now, the only foreigners who can apply for SS number as those on work visas or green cards). Again, this certainly was not the case pre-9/11.

**Green Card Maintenance:** in the unlikely scenario that Ashot Yeghiazaryan did have a US green card at some point of his life (based on EB-5 Investor Immigrant Program, for example), he would have long lost it. This is because absences of longer than 6 months in any calendar year from the US would have sooner or later led to a green card cancellation (he could have gotten 3-4 years of 'detachment' from the physical presence rule by obtaining Re-Entry Permits, but this venue would have at some point exhausted itself). Additionally, no one would ever seek asylum in the US if they already have a US green card.

## US Resident (IRS Definition) and US Permanent Resident (USCIS definition):

Additionally, filing one's personal income taxes as a resident may be easily confused to being a permanent US resident of the United States (in other words, the IRS term is confused with the USCIS term). The taxation of aliens by the United States is significantly affected by the residency status of such aliens. Although the immigration laws of the United States refer to aliens as immigrants, nonimmigrants, and undocumented (illegal) aliens, the tax laws of the United States refer only to Resident and Non-Resident aliens. In general, the principle is that Resident Aliens are taxed in the same manner as U.S. citizens on their worldwide income (perhaps, this is where the confusion lies that he is a US green card holder and is about to become a US citizen), and non-resident aliens are taxed according to special rules contained in certain parts of the Internal Revenue Code. A major distinguishing feature of this special tax regime concerns the source of income: a nonresident alien (with certain narrowly defined exceptions) is subject to federal income tax only on income which is derived from sources within the United States and/or income that is effectively connected with a U.S. trade or business.

The residency rules for tax purposes are found in I.R.C. § 7701(b). Although the tax residency rules are based on the immigration laws concerning immigrants and nonimmigrants, the rules define residency for tax purposes in a way that is very different from the immigration laws.

BA 00503

Under the residency rules of the Code, an alien will become a Resident Alien in one of three ways:

1. By being admitted to the United States as, or changing status to, a Lawful Permanent Resident under the immigration laws (the Green Card Test);
2. By passing the Substantial Presence Test (which is a numerical formula which measures days of presence in the United States); or
3. By making what is called the "First-Year Choice" (a numerical formula under which an alien may pass the Substantial Presence Test one year earlier than under the normal rules).

**Substantial Presence Test**

One will be considered a U.S. resident for tax purposes if he meets the substantial presence test for the calendar year. To meet this test, he must be physically present in the United States on at least:

1. 31 days during the current year, AND
2. 183 days during the 3-year period that includes the current year and the 2 years immediately before that, counting:
    - All the days you were present in the current year, and
    - 1/3 of the days you were present in the first year before the current year, and
    - 1/6 of the days you were present in the second year before the current year.

**Who has standing to petition for a diplomatic visa revocation:** Russian government; it would be ideal to get an affidavit from the Russian government, confirming the applicant misused the visa for inappropriate non-government purposes, as well as prepare a petition to apply to revoke the diplomatic visa. Where to file (file by all means available, including by mail, e-mail and fax):

1) Department of State Investigative Field Office with jurisdiction over the applicant's current place of residence. Los Angeles Field Office, 255 E. Temple Street, Suite 1273, Los Angeles, CA 90012, phone: (213) 894 3290; AND

2) US Immigration and Customs Enforcement ("ICE"), Compliance Enforcement Unit, Los Angeles Field Office, 300 North Los Angeles St., Room 7631A, Los Angeles, CA 90012, Phone: (213) 830-7911; (213) 830-7911.

3) US Embassy in Moscow, Russia (they issued the diplomatic visa and can revoke it provided there are adequate grounds). The Moscow USCIS Field Office is located in the Consular Section of the U.S. Embassy at Novinskiy Bulvar 19/23. General Email: moscow.dhs@dhs.gov; telephone: (7 495) 728-5550, Monday to Friday - 8:00 a.m. to 5:00 p.m; Fax: (7 495) 728-5083; Mailing Address from the United States; Field Office Director, USCIS, Unit 5430, DPO, AE 09721, AND

4) Department of State Criminal Investigative Division. DS Criminal Investigative Division conducts criminal investigations into violations of passport and visa fraud. The U.S. visa permits a traveler to enter the United States for a specific purpose, such as work or tourism. The division's Visa Fraud Branch investigates and coordinates international visa fraud cases including fraudulent issuance and use of U.S. visas. The division also manages the Russian Business Investigations Initiative to combat Russian and Eurasian organized crime groups/criminals in the United States. File to the attention of Visa Fraud Branch, Department of State Criminal Investigative Division, Department of State, 2201 C Street NW, Washington D.C., DC 20520, (202) 606-1800 AND

5) Fraud Detection and National Security Directorate of the US Citizenship and Immigration Services. Chief, Fraud Detection and National Security Division, Don Crocetti, (202) 272 8848.

**How and where to report derogatory information about an asylum applicant:** considering that an average asylum case only takes 5-6 weeks from the moment it is filed until the interview appointment, and is completely confidential (no public can attend the interview with the asylum officer and no dates or asylum office schedules are released to anyone but the applicant and his attorney of record), time is of essence. While it is possible to prevent the issuance of asylum, it is often much harder to revoke asylum that was already granted. Who can report derogatory information: any person/business with credible knowledge of derogatory information: of course, anonymous tips will not be given as much weight as formal provision of derogatory information (see below for what would be derogatory information in any asylum case) by the foreign government, large US businesses with excellent reputation, major law firms, etc.

**Where to report (in person and by mail):**

1. The following Asylum Offices service California: <u>Los Angeles Asylum Office.</u> This office is located at: 1585 South Manchester Avenue Anaheim, CA 92802. Director: George Mihalko, Deputy Director: David Radel. The public phone number is: 714-808-8000 AND

2. US Citizenship and Immigration Services Asylum Refugee, Asylum and International Operations Directorate, Asylum Division. The Asylum Division manages the above Asylum Offices. Chief, Asylum Division, Joseph Langlois (or Joanna Ruppel, Deputy), phone: (202) 272 1663.

# GENERAL INFORMATION ABOUT INVOLVED IMMIGRATION ISSUES:

**DIPLOMATIC VISA:**

Diplomatic applicants may not enter the United States on a diplomatic passport alone. They may only enter the US on a special diplomatic A visa. Diplomatic applicants must meet specific requirements to qualify for a diplomatic (A) visa under immigration law. **For an A-1 visa, the**

5

BA 00506

holder must be traveling to the United States on behalf of his/her national government to engage solely in official activities for that government. Government officials traveling to the United States to perform non-governmental functions, or traveling as tourists for their own pleasure, require the appropriate visa, and do not qualify to use A visas. Please see above for how to report the misuse of the diplomatic visa and request a revocation of the visa. Please note that the United States DO NOT have the standing to revoke or take away the diplomatic passport itself (only the visa in it). The revocation of the passport must be done by the issuing authorities of the country that issued it (such as the Russian Federation in this case).

**Immigration Status of Dependents:** unless Mr. Yeghiazaryan's spouse and 4 children used their non-diplomatic passports for entry into the US, they are now in the US on an A-2 visa (a visa for spouse and minor children of A-1 principal visa holder). Any changes or revocation of the principal's visa will lead to an automatic cancellation of their derivative A-2 visa status. By the same token, provided their names will be joined in the asylum claim, their continued derivative status in the US will depend on the success or failure of Mr. Yeghiazaryan's claim. If his claim succeeds, they will receive asylum in the United States (provided the children are still minor and are under the age of 21). Of course, each of them can also file their own case, based on persecution separate from the claims of the main applicant. Such filings, however, are discouraged by the Asylum Officers, as one may not be filing 2 asylum claims simultaneously.

## ASYLUM IN THE UNITED STATES.

### Eligibility

In order to be eligible for asylum, the applicant must be able to show that he has suffered past persecution by the government of his home country, or by a group that the government is either unwilling or unable to control, because of his political opinion, race, nationality, religion, or membership in a particular social group. Also, if he has a well founded fear of future persecution based on one of the five grounds, he is eligible for asylum. If he is able to establish that he has suffered past persecution, there is a presumption in his favor that he has a well-founded fear of future persecution.

BA 00507

It is important to remember that asylum is a form of discretionary relief. This means that the asylum officer or the Immigration Judge can take things other than his asylum claim into account when they make their decisions. They can consider things like a criminal record and they will take his credibility into account. If the asylum officer or immigration judge does not believe him for some reason, he or she will indicate that he "lacks credibility." If they think that he "lacks credibility," they will deny his case.

## What do the 5 protected grounds mean (many attorneys will mix and match the grounds to make the case stronger)?

1. Political opinion: political opinion can be either actual or imputed. This means that he can be persecuted because of his real political beliefs or because the persecutor believes that he holds certain political opinions.
2. Race: he is persecuted because of the color of his skin
3. Nationality: he is persecuted because of where his family is from (ethnicity)
4. Religion: he is persecuted because of his religious beliefs
5. Membership in a particular social group: this category is the most ambiguous of all of the categories. Some examples of social groups are: homosexual, victim of severe domestic violence, victim of Female Genital Mutilation (FGM)

## What is persecution?

Persecution has been defined as a "serious threat to life or freedom" and "the infliction of suffering or harm" upon those who fall into one of the five categories. The harm MUST rise above the level of harassment to constitute persecution, but non-life threatening violence may be sufficient. Furthermore, if there is a long pattern of harassment based on one of the protected grounds, this might be enough to rise to the level of persecution.

## One Year Deadline

He MUST apply for asylum within one year of arriving in the United States.

# DEROGATORY FACTORS IN ASYLUM:

## 1) Firm Resettlement.

If he has lived in another country before coming to the United States (typically, a few weeks would not count in the absence of having a green card in the other country or a long-term work visa), it is possible that the US government will try to say that he "firmly resettled" in that country. If the government is able to show that he firmly resettled, he cannot win asylum in the United States. What does "firm resettlement" mean?

## 8 CFR 208.15 - Definition of "firm resettlement."

Code of Federal Regulations - Title 8: Aliens and Nationality

> *An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes: (a) That his or her entry into that country was a necessary consequence of his or her flight from persecution, that he or she remained in that country only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or (b) That the conditions of his or her residence in that country were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled. In making his or her determination, the asylum officer or immigration judge shall consider the conditions under which other residents of the country live; the type of housing, whether permanent or temporary, made available to the refugee; the types and extent of employment available to the refugee; and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation that includes a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.*

**It is certain that his immigration counsel would try to argue that none of the above was the case during his stay in the third country.**

## 2). Criminal Issues

The asylum applicant must answer questions on the I-589 about current and previous criminal convictions and arrests. Applicants for both asylum and withholding are considered statutorily ineligible if they have been convicted of a "particularly serious crime." For purposes of asylum applications, any conviction for an aggravated felony will render the applicant statutorily ineligible. For the purposes of withholding of removal, if the applicant has been convicted of one or more aggravated felonies for which the aggregate term(s) of imprisonment is five years or more, he will be statutorily ineligible for having committed a "particularly serious crime." Even if the applicant's aggregate prison term was under five years, the adjudicator can still make an inquiry as to whether or not the conviction rose to the level of a "particularly serious crime" to determine whether or not the applicant is statutorily eligible.

Even if the applicant's conviction was for a crime that did not rise to the level of an aggravated felony, the conviction can lead to the denial of an asylum application. Additionally, to qualify for asylum, an applicant must merit a favorable exercise of discretion. Thus, even if an asylum applicant's conviction is not found to be a "particularly serious crime" and does not render him statutorily ineligible for asylum, an adjudicator may still deny the application on discretionary grounds.

## 3). Prior Government Employment

Where an applicant was a political activist against a dictatorial government (which will likely what he will base his claim for political asylum on), it was reasonable to conclude that prior employment by that same government would undermine the claim (**does Duma qualify as "government"?**). In other words, the applicant will probably try to say he had experienced abuse by the police or military, or that militia failed to protect him against harm from private individuals. Given this fact pattern, employment as a government high-rank official may render the applicant ineligible for asylum. If the answer to this question is that the applicant tried to hide his political beliefs from his employer (the Russian government), then an adjudicator might reasonably question how the potential persecutors would be aware that the applicant had radical political beliefs when his previous employer remained unaware.

BA 00510

# THE AFFIRMATIVE ASYLUM APPLICATION PROCESS

An applicant can file for asylum either affirmatively or as a defense to removal "deportation" proceedings. Since the applicant seems to have a valid visa and is not out of status, he likely applied affirmatively. When an applicant files for asylum, he generally files simultaneously for withholding of removal and for relief under the Convention against Torture (using the same form for all 3 claims). The latter two forms of relief can only be granted by an Immigration Judge, however, not by the Asylum officer.

If the applicant is still in lawful status at the time the Asylum Office decision is issued (6-8 weeks after the petition is filed), he will either received a recommended approval or a Notice of Intent to Deny. If the application is denied by the Asylum Office, there is no appeal of the denial. Thus, if the applicant loses his asylum application and returns to his country before the expiration of his lawful status here, he will likely find it impossible to obtain another non-immigrant visa (such as a diplomatic visa or a tourist visa) to the United States (because he has shown immigrant intent in the US and most visas do not permit immigrant intent).

**Affirmative Filing:**

This process is initiated by sending three copies of form I-589 1) to the USCIS Service Center which has jurisdiction over the region in which the applicant resides. In addition to the I-589 application form itself, the asylum application packet generally includes a declaration by the applicant, corroborating evidence about the claim, various affidavits and country conditions information. If an attorney is representing the applicant on the application, the attorney must also file a Notice of Appearance form G-28. When there is an attorney of record, USCIS is supposed to send all notices about the case to both the attorney and the applicant.

After the I-589 has been filed, the local Asylum Office will schedule the applicant for an interview. There are eight Asylum Offices throughout the United States. Applicants will have the interview scheduled usually 3-6 weeks after the application has been received.

BA 00511

## The Asylum Interview

Asylum Officers have a great deal of discretion in how they conduct the asylum interview. Asylum Officers do not receive the asylum applications until the morning of the interview, after the applicant has checked in. Many Officers will take time before calling the applicant in to review the file. Other Officers will first get the oral testimony and then go back and review the file. Most Officers will conduct the vast majority of the interview themselves, leaving time at the end for the attorney to ask follow up questions and/or make a summation of the case. Most Officers will allow the attorney to rephrase questions which the applicant doesn't understand or to draw the Officer's attention to relevant documents in the file. Other Officers do not allow the attorney to speak at all until the conclusion of the interview, and only allow an attorney to make a closing statement. A typical interview will last 1-3 hours, sometimes a bit longer or shorter. The Asylum Officer will have to review his/her decision with their supervisor before issuing it.

## The Decision

Two weeks after the interview, the applicant must return to the Asylum Office to pick up the decision. There is no substantive exchange with the Officer on this date; the applicant literally receives a piece of paper at the check-in window. In some situations (for particularly weak or complex cases), the case must be referred to Asylum Headquarters before the decision is issued. This is true for cases where the Asylum Office wants guidance.

## Recommended Approval

If the Officer wishes to approve the case, the applicant will receive a brief letter explaining that the Asylum Office has recommended approval of the application. This is a recommended approval, rather than a final approval, pending necessary background checks to confirm the applicant's identity and that the applicant has no criminal or terrorist background (in the United States) which would preclude a grant to asylum. The background check is done by running biometrics of the candidate against various US databases.

BA 00512

It generally takes around six months for the applicant to receive the final approval notice in the mail along with a new arrival record (I-94 card) which says "asylee" status granted for an "indefinite" period of time.

**One year after the final approval date, the applicant can apply for legal permanent residence ('green card').**

**Notice of Intent to Deny**

If the applicant is still in lawful status at the time the Asylum Office issues the decision, and if the Asylum Office does not believe that the applicant has met his burden of proving his case for asylum, the applicant will receive a Notice of Intent to Deny ("NOID"). The NOID is a detailed letter which explains the Asylum Office's reasoning for denying the application. The applicant has 16 days in which to respond to the NOID in the hope of overturning the decision.

It is possible to obtain more time to respond to a NOID if there is a good reason to do so. The attorney can write a letter to the Asylum Officer requesting additional time, for example, thirty days, to respond. If a response is not timely submitted to the NOID, the decision becomes final.

There is no set time frame for when the Asylum Officer will respond to the NOID rebuttal. It may take several weeks or longer. The Officer can change her mind and recommend approval or issue a final denial. If the case is finally denied, there is no appeal from the denial. The applicant can, however, reapply for asylum in the future after falling out of legal status (e.g. after current I-94 arrival card validity expires) and then go through the Court procedure discussed below. The Asylum Office does not have jurisdiction to decide withholding or CAT claims. These claims can only be heard in Immigration Court. In practice, the Immigration Court will rarely grant an approval to a claim that was previously denied by the Asylum officer.

**Referral to Immigration Court**

If the asylum application is not approved by the Asylum Office and the applicant is NOT in lawful status (I-94 arrival records expired), he will be served with a Referral letter which will very briefly outline the reasons that the case was not approved, and a Notice to Appear ("NTA")

in Immigration Court. The NTA is the charging document which initiates "deportation proceedings") against the applicant. The NTA will contain charges against the applicant as well as a date and time to appear in Immigration Court. Failure to appear in Immigration Court will result in an in absentia removal order being issued against the applicant. The applicant can renew his application for asylum before the Immigration Judge, and present his asylum case 'de novo'.

## Does previous grant of a family-based or employment-based green card in the US (if this indeed ever happened) present a negative factor in an asylum process?

Yes, such previous application would be a negative factor in an asylum application. A recent entry on a diplomatic visa would also raise suspicions as to why the applicant did not apply for asylum then, and instead chose to go back to a country where the applicant claims he fears persecution. Such recent US visit (or visits), then going back to the home country, and then arriving back to the US, safe and alive, only to file for asylum, would certainly make the case less credible.

BA 00514