UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                :

ASHOT EGIAZARYAN,                :
                                      :

                Plaintiff,      :

                                      :

                                      :        11 Civ. 2670
                                      :        (PKC)(GWG)

                                      :

PETER  ZALMAYEV,               :

                                      :

                Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## <u>DECLARATION OF RINAT AKHMETSHIN</u>

CITY OF WASHINGTON        )
                               )     ss.:
DISTRICT OF COLUMBIA      )

           **RINAT AKHMETSHIN,** declares under penalty of perjury pursuant to 28

U.S.C. § 1746, as follows:

         1.        I am the subject of a subpoena issued by the Plaintiff in this action to

Google, Inc. for copies of my emails on my gmail account since December 1, 2009.  I am not a

party to this action.  Unless otherwise specified, I make this declaration based on personal

knowledge.

         2.        My counsel received a subpoena for me sometime late last year that was

issued by Mr. Egiazaryan.  That subpoena called for both my deposition and for the production

of documents.  I made document productions in this case, disclosing more than 800 pages of

documents, and my deposition was taken on March 20, 2012.  The transcript of that deposition

runs to some 380 pages.

3.      Plaintiff issued a subpoena to Google, Inc. dated July 16, 2012.  That subpoena calls for Google to produce emails from my gmail account that (1) are either to, from, or have me copied on or mention 139 separate search terms (not including permutations), or (2) mention in the body of the email those same 139 search terms.  Some of the terms are so general they could encompass anything "Russian" or "Jewish" or "Kremlin."

4.      My business is strategic communications.  Individuals and entities seek me out when they have an issue; if one does not have an issue one does not need to engage in strategic communications.  As such, a considerable percentage of the emails I write or read in my profession touch on confidential, proprietary, and even more sensitive information.  That is one reason I delete them as a matter of routine practice.

5.      Please allow me to provide a few examples.  Some of my clients are national governments or high ranking officials in those governments.  These are the most sensitive communications in which I engage.  Some of my government clients have highly sensitive discussions in my emails concerning the location or relocation of American military bases in areas within the former Soviet Union.  This client's interest was directly aligned with the United States' interests and included communications with both the Department of State and the Department of Justice.   Some of these communications also address other nation's interests in the base location issue in a candid, unvarnished manner.   On a separate issue, other communications involved the Head of the Russian Drug Enforcement Agency.  Topics included in communications on this task range from narco-trafficking and terrorism in Afghanistan to surveillance of undercover agents, suspected undercover agents, and their identities.  Disclosure of such data could put individual lives at risk, potentially including American lives.

6.      In addition to my government clients, I have clients in the private sector. Many of my private sector clients are in the energy industry.  Competition for oil rights in the arctic, including the Russian arctic, is extreme.  Many commercial enterprises are seeking to advance their interests, or replace other interests, in these markets.  As such, my emails contain highly proprietary commercial trade secrets and strategic plans that would severely disadvantage the subject of such communications if they were disclosed.  While all of these communications have something to do with "Russia," none of them have anything to do with Mr. Zalmayev, Mr. Bloomfield, or Mr. Egiazaryan.  They certainly have nothing to do with whether Mr. Egiazaryan is anti-semitic, is anti-American, is a neo-Stalinist, or is worthy of asylum in the United States.

7.      To attempt to resolve the Google Subpoena issue without Court intervention, I instructed my counsel to offer to accept the Google Subpoena if Plaintiff agreed to limit the search terms to Zalmayev, Bloomfield, and Egiazaryan.   Counsel advised me that Plaintiff rejected that offer and countered with an offer that included acceptance of all 139 search terms.

8.      Plaintiff made no effort to even try to discriminate between relevant and irrelevant search terms with respect to this litigation.  The resulting burden on me and my counsel if the subpoena is not quashed would be overwhelming.  Counsel's review of my emails for a two-and-a-half year period could take weeks, if not longer, and would jeopardize communications of the most sensitive type that have nothing to do with this case.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 21, 2012.

_____/s/_____
Rinat Akhmetshin