UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ASHOT EGIAZARYAN,                          :
                                           :
                 Plaintiff,                :
                                           :
        -against-                          :    11 CV 02670 (PKC)(GWG)
                                           :
PETER ZALMAYEV,                            :
                                           :
                 Defendant.                :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DISMISSING DEFENDANT'S ANTI-SLAPP COUNTERCLAIM AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

**FLEMMING ZULACK WILLIAMSON ZAUDERER LLP**
**One Liberty Plaza**
**New York, New York  10006**
**(212) 412-9500**

*Attorneys for Plaintiff Ashot Egiazaryan*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ...........................................................................................................................2

POINT I        MR. EGIAZARYAN'S LAWSUIT HAD A SUBSTANTIAL
BASIS IN FACT AND LAW AND DEFENDANT FAILED
TO PROVE OTHERWISE ...........................................................................2

       A.     The Prior Dismissal Of Mr. Egiazaryan's
Defamation Claims Does Not Establish That Those
Claims Lacked A Substantial Basis In Fact And Law .......................................2

       B.     Defendant Fails To Address Plaintiff's Actual
Defamation Claims And Rebut Mr. Egiazaryan's Showing
That His Claims Had A Substantial Basis In Fact And Law ..............................7

POINT II       MR. EGIAZARYAN'S LAWSUIT WAS NOT A SLAPP SUIT .............10

       A.     Defendant Fails To Rebut The Evidence Put Forth By Mr. Egiazaryan
Establishing That He Is Not a "Public Applicant Or Permitee" And
That His Lawsuit Did Not Involve "Public Petition And Participation"
Within The Meaning Of New York's Anti-SLAPP Statute ..............................11

          1.    Mr. Egiazaryan is Not a "Public Applicant
or Permitee" Seeking Permission to Act......................................................11

          2.    Defendant Did Not Engage in
"Public Petition and Participation" .............................................................13

          3.    Defendant Seeks to Have this Court View
The Asylum Application as a Public Process ...............................................15

       B.     Defendant's Reliance On This Court's
Denial Of Plaintiff's Rule 12 Motion To
Dismiss The Anti-SLAPP Counterclaim Is Misplaced ...................................16

POINT III      DEFENDANT CANNOT RECOVER DAMAGES
UNDER NEW YORK'S ANTI-SLAPP STATUTE ................................17

CONCLUSION.....................................................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Brady v. Town of Colchester*,
   863 F.2d 205 (2d Cir. 1988)................................................................................ 20

*Catanese v. Lipschitz*,
   44 A.D.2d 579, 353 N.Y.S.2d 250 (2d Dep't 1974) ................................................ 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548 (1986)..................................................................... 20

*Chandok v. Klessig*,
   632 F.3d 803 (2d Cir. 2011).................................................................................. 11

*Clemente v. Impastato*,
   290 A.D.2d 864, 736 N.Y.S.2d 281 (3d Dep't 2002) .......................................... 3, 4

*Creed v. United Hosp.*,
   190 A.D.2d 489, 600 N.Y.S.2d 151 (2d Dep't 1993) ............................................ 18

*Davis v. New York City Housing Auth.*,
   No. 90 Civ. 628, 2002 WL 31748586 (S.D.N.Y. Dec. 6, 2002)............................... 21

*Duane Reade, Inc. v. Clark*,
   2 Misc. 3d 1007(A), 784 N.Y.S.2d 920 (Sup. Ct. N.Y. Co. March 31, 2004) ........ 14

*Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*,
   313 F. Supp. 2d 339 (S.D.N.Y. 2004)......................................................... 3, 4, 5, 6

*Ginx, Inc. v. Soho Alliance*,
   720 F. Supp. 2d 342 (S.D.N.Y. 2010)..................................................................... 4

*Giorgio v. Pilla*,
   100 A.D.3d 826, 954 N.Y.S.2d 584 (2d Dep't 2012) ............................................. 3

*Guerrero v. Carva*,
   10 A.D.3d 105, 779 N.Y.S.2d 12 (1st Dep't 2004) ......................................... 10, 13

*Gurary v. Nu-Tech Bio-Med, Inc.*,
   303 F.3d 212 (2d Cir. 2002).............................................................................. 6, 8

*Hariri v. Amper*,
   51 A.D.3d 146, 854 N.Y.S.2d 126 (1st Dep't 2008) ............................................. 10

*Howard v. Gleason Corp.*,
   901 F.2d 1154 (2d Cir. 1990)............................................................................... 19

*Kregler v. City of New York*,
   770 F. Supp. 2d 602 (S.D.N.Y. 2011).................................................................... 5

**TABLE OF AUTHORITIES (Cont'd)**

<u>**Cases**</u>                                                                                               <u>**Page(s)**</u>

*Kurten v. R.D. Werner Co.*,
  139 A.D.2d 699, 527 N.Y.S.2d 455 (2d Dep't 1988) ................................................................. 5

*Linares v. McLaughlin*,
  423 Fed. Appx. 84 (2d Cir. 2011) ....................................................................................... 16, 17

*Silvercorp Metals Inc. v. Anthion Management LLC*,
  36 Misc. 3d 660, 948 N.Y.S.2d 895 (Sup. Ct. N.Y. Co. July 10, 2012) ................................... 14

*Simmonds v. New York City Dep't of Corr.*,
  No. 06 Civ. 5298, 2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008) ............................................ 21

*Walsh v. Pyramid Co. of Onondaga*,
  228 A.D.2d 259, 643 N.Y.S.2d 576 (1st Dep't 1996) .................................................................. 5

*Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead by its Bd. of Trs. of the Vill. of
  New Hempstead*,
  98 F. Supp. 2d 347 (S.D.N.Y. 2000) ......................................................................................... 3

<u>Statutes</u>

22 U.S.C. § 611, *et seq.* ................................................................................................................ 21

CPLR 3211 .................................................................................................................................. 3, 4

CPLR 3212 .................................................................................................................................. 3, 4

N.Y. Civil Rights Law §§ 70–a  ................................................................................................... 14

N.Y. Civil Rights Law § 70-a(1)  ................................................................................................. 10

N.Y. Civil Rights Law § 70-a(1)(a)-(c) .................................................................................. 17, 19

N.Y. Civil Rights Law § 70-a(1)(a) ............................................................................................... 2

N.Y. Civil Rights Law § 70-a(1)(b) ............................................................................................. 19

N.Y. Civil Rights Law 76–a  ........................................................................................................ 14

N.Y. Civil Rights Law § 76-a(1)(a)-(b) ....................................................................................... 10

<u>Regulations</u>

8 C.F.R. §§ 208.6(a)-(b) ............................................................................................................... 12

## PRELIMINARY STATEMENT

There is no evidence to support the elements of defendant's anti-SLAPP claim. Plaintiff showed that (1) his lawsuit had a substantial basis in fact and law, (2) the conduct of plaintiff and defendant was not of the public nature necessary to entitle defendant to relief under the anti-SLAPP statute, and (3) defendant did not suffer damages under the anti-SLAPP statute. Defendant's opposition fails for five reasons:

- **Defendant Misconstrues the Legal Standard** -- Defendant urges an erroneous legal standard: that the dismissal of plaintiff's defamation claims establishes *a fortiori* that those claims lacked a substantial basis in fact and law. That asserted standard is inconsistent with the applicable case law; courts have repeatedly held that dismissed defamation actions could be commenced with a substantial basis. The correct standard is whether the action was frivolous.

- **Defendant Fails to Address Plaintiff's Actual Defamation Claims** -- Defendant's opposition redefines plaintiff's defamation claims to wrongly contend they were limited to statements describing Mr. Egiazaryan as being affiliated with the LDPR. Defendant's opposition ignores plaintiff's actual defamation claims, as contained in plaintiff's pleadings: that Mr. Egiazaryan is an anti-Semitic and anti-American xenophobe who embezzled Chechen relief funds and committed war crimes.

- **Defendant Seeks to Have this Court View the Asylum Application as a Public Process** -- Although he admits that "Asylum applications are reviewed in a closed process[,]"defendant seeks to avoid that controlling fact by contending that his communications fall within the scope of the anti-SLAPP statute because United States citizens should have input on asylum decisions as if it were an open process.

- **Defendant Fails to Rebut the Evidence that he did not Engage in Public Petition and Participation** -- Defendant ignores the fact that some of the statements that plaintiff alleged to be defamatory did not mention any asylum application, were made to private individuals, and do not directly challenge an application.

- **Defendant has not Suffered any Damages and is not Entitled to any Damages** -- Defendant does not dispute that his only alleged damages, his attorneys' fees, were paid by a foreign principal. Nor has he made any showing that the defamation action was commenced to maliciously inhibit defendant's speech rights.

This action is ripe for summary disposition.  In opposition to plaintiff's motion for summary judgment and in support of his own cross-motion for summary judgment, defendant agrees with plaintiff that there are no factual issues to be tried concerning the "liability" elements of his anti-SLAPP counterclaim.[1]

## ARGUMENT

### POINT I

### MR. EGIAZARYAN'S LAWSUIT HAD A SUBSTANTIAL BASIS IN FACT AND LAW AND DEFENDANT FAILED TO PROVE OTHERWISE

**A.  The Prior Dismissal Of Mr. Egiazaryan's Defamation Claims Does Not Establish That Those Claims Lacked A Substantial Basis In Fact And Law**

Mr. Zalmayev cannot prevail on his anti-SLAPP counterclaim without demonstrating that Mr. Egiazaryan's pleadings lacked a substantial basis in fact and law.  *See* N.Y. Civil Rights Law § 70-a(1)(a).  Defendant urges this Court to apply an erroneous standard in which the dismissal of a defamation action pursuant to Rule 12 of the Federal Rules of Civil Procedure establishes *a fortiori* that the action lacked a substantial basis in fact and law under New York's anti-SLAPP statute.  *See* Defendant's Memorandum of Law Opposing Ashot Egiazaryan's Motion for Summary Judgment and Supporting Peter Zalmayev's Cross Motion for Summary Judgment ("Defendant's Opposing Mem."), p. 15 ("The dismissal of the complaint conclusively established that the complaint was brought without a substantial basis."), p. 16 ("The Rule 12

---

[1] In its March 18, 2013 Order (Docket Entry #217), this Court permitted the parties to file moving and opposing briefs up to 50 pages in length in connection with their motions for summary judgment.  The order did not address the length of reply briefs, which generally are limited to 10 pages pursuant to Rule 2(C) of the Court's Individual Practices.  This brief is submitted as both a reply in further support of plaintiff's summary judgment motion and an opposition to defendant's cross-motion.  Although this should allow him to file a brief up to 50 pages, plaintiff is mindful of the Court's statement in the March 18, 2013 Order that "brevity is preferred," and he has limited this brief to 22 pages.

dismissal of [Counts II through V of] the complaint and amended complaint means conclusively that the case had no substantial basis in law."). This standard is wrong, is inconsistent with New York state and federal case law, and is belied by defendant's prior judicial admissions to the contrary.

A dismissed action may have had a substantial basis in fact and law under New York's anti-SLAPP statute. *See*, *e.g.*, *Clemente v. Impastato*, 290 A.D.2d 864, 865, 736 N.Y.S.2d 281, 282 (3d Dep't 2002) ("[W]e conclude that plaintiff's defamation action, although now dismissed [after the court granted defendant's motion to dismiss], was commenced with a substantial basis in fact and law."); *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2004) (notwithstanding its dismissal of plaintiff's complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure, the court "concluded that [plaintiff's] suit was not brought 'without a substantial basis in law or fact'"); *see also Giorgio v. Pilla*, 100 A.D.3d 826, 828, 954 N.Y.S.2d 584, 587 (2d Dep't 2012) (affirming trial court's dismissal of plaintiff's complaint but finding "plaintiff tendered proof sufficiently demonstrating that the action has a substantial basis in fact and law" under the anti-SLAPP statute). In incorrectly asserting that the "Rule 12 dismissal of [Counts II through V of] the complaint and amended complaint means conclusively that the case had no substantial basis" -- a position that has no legal support[2] -- defendant failed to address the case law that directly contradicted his argument,

---

[2] Defendant cites to CPLR 3211 and 3212 as support for his position that a "Rule 12 dismissal of the complaint and amended complaint means conclusively that the case had no substantial basis." However, these statutes do not support defendant's position and, in any event, they have no application here. CPLR 3211 and 3212 are procedural -- not substantive -- rules and they have no application on a motion for summary judgment in federal court, as the "standards for granting summary judgment motions in the federal courts are clearly established in FRCP Rule 56 and federal case law." *Yeshiva Chofetz Chaim Radin, Inc. v. Vill. of New Hempstead by its Bd. of Trs. of the Vill. of New Hempstead*, 98 F. Supp. 2d 347, 360 (S.D.N.Y. 2000) (in denying defendants' motion for summary judgment on their anti-SLAPP claim, the court rejected

even though Mr. Egiazaryan cited to both *Clemente* and *FORSA* for this proposition in his moving papers.

Defendant also failed to address his prior admission that the dismissal of the defamation claims does not establish that those claims lacked a substantial basis in fact and law.  After Mr. Egiazaryan's Amended Complaint was dismissed, defendant continued to seek discovery on the basis that the dismissal of the defamation claims did not establish that they lacked a substantial basis.  When defendant sought to obtain out-of-district discovery in England pursuant to the Hague Convention, defendant's counsel submitted a sworn statement to the English court arguing that the discovery was necessary notwithstanding the dismissal of Mr. Egiazaryan's claims.  His counsel wrote:

> **Despite Mr. Egiazaryan having lost his case in New York that is not enough for Mr. Zalmayev to win his counterclaim**, which is necessary for him to do if he is even to recover his attorney's fees in defending the original action [which can be recovered only upon a finding that the action lacked a substantial basis in fact and law].[3]

---

defendant's request to use CPLR 3211 and 3212 instead of FRCP Rule 56, holding "that there is no basis for applying the proof requirements of the CPLR to a summary judgment motion in this federal court."); *see also Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 366 (S.D.N.Y. 2010) (holding that New York's anti-SLAPP law is a "state procedural rule").  In arguing that these statutes are substantive and should be applied on the parties' motions for summary judgment, defendant ignores the relevant case law directly contradicting his argument.  But even if CPLR 3211 and 3212 did apply here, all they would do is shift the burden to plaintiff to prove the substantial basis of his underlying claims -- a burden that Mr. Egiazaryan already satisfied in his moving papers by making an unrebutted showing of the substantial basis of his defamation claims.  In addition, defendant's suggestion that CPLR 3211(g) has some type of preclusive effect on the substantial basis issue is wrong.  Defendant did not seek to dismiss plaintiff's pleadings pursuant to CPLR 3211(g), and no showings were sought or made concerning the substantial basis of plaintiff's claims on defendant's earlier Rule 12 motions.  Defendant's reliance on CPLR 3211 and 3212 is entirely misplaced.

[3] Second Witness Statement of James Philip Golden, counsel for Mr. Zalmayev, dated November 9, 2012, in connection with defendant's attempt to obtain non-party discovery pursuant to the Hague Convention, attached as Exhibit 38 to the Declaration of Jason T. Cohen, dated April 19, 2013 (the "Moving Cohen Decl."), ¶¶ 21, 22.

> The essence of the anti-SLAPP counterclaim is showing that Mr. Egiazaryan's original action was baseless. **Mr. Zalmayev has to prove that the defamation claim was without any substantial basis in fact and law**.

(Emphasis added.)  Now that he has obtained that additional discovery, defendant is doing an about face, changing his argument to suit his immediate needs.  Defendant should be held to the standard that his counsel previously admitted was correct.  His counsel's statement constitutes a judicial admission and can be used against defendant in connection with the parties' summary judgment motions.  *See, e.g.*, *Kregler v. City of New York*, 770 F. Supp. 2d 602, 607 (S.D.N.Y. 2011) (holding that the "statements of [plaintiff's] counsel amount to a judicial admission that has a binding effect on all future proceedings."); *Walsh v. Pyramid Co. of Onondaga*, 228 A.D.2d 259, 260, 643 N.Y.S.2d 576, 577 (1st Dep't 1996) (granting motion for summary judgment because "statement by plaintiff's counsel in an affirmation… was a judicial admission and binding in the absence of a sufficient explanation.") (citations omitted); *Kurten v. R.D. Werner Co.*, 139 A.D.2d 699, 700, 527 N.Y.S.2d 455, 456 (2d Dep't 1988) (granting motion for summary judgment after plaintiffs' counsel's statements in affirmation deemed to be judicial admissions); *Catanese v. Lipschitz*, 44 A.D.2d 579, 582, 353 N.Y.S.2d 250, 252 (2d Dep't 1974) ("The statement of plaintiff's attorney, in his affirmation in opposition to the motion... would appear to constitute a judicial admission".).

As set forth in Mr. Egiazaryan's moving papers, the correct standard to determine whether plaintiff's defamation claims lacked a substantial basis in fact and law is a *frivolous* standard.  *See FORSA*, 313 F. Supp. 2d at 344-45 (holding that so long as the action is not frivolous, the anti-SLAPP claimant cannot prove that the action was brought without a substantial basis in fact and law); *see also* Bill Jacket, L. 1992, ch. 767 (Ex. 1 to the Cohen Decl.), p. 24 ("This bill is intended to penalize *frivolous* SLAPP suits….") (emphasis added).

Under this standard, defendant's anti-SLAPP suit should be dismissed because he failed to prove that Mr. Egiazaryan's pleadings were frivolous. Plaintiff put forth specific evidence and demonstrated that he had a substantial basis to believe that he satisfied each element of his defamation claims. *See* Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment Dismissing Defendant's Anti-SLAPP Counterclaim ("Plaintiff's Moving Mem."), pp. 31-40. Defendant did not address those arguments or rebut plaintiff's evidence, or proffer any relevant evidence of his own in support of his cross-motion.

Moreover, even if defendant had proffered relevant evidence and could prove that certain of Mr. Egiazaryan's claims lacked a substantial basis, that showing would not be enough to prove, as he must, that the pleadings *as a whole* lacked a substantial basis in fact and law. As it would in an analysis under Rule 11 of the Federal Rules of Civil Procedure, the Court should look to the nonfrivolous claims in Mr. Egiazaryan's pleadings to determine if they "are of a quality sufficient to make the suit as a whole nonabusive". *See Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 223 (2d Cir. 2002). Defendant's reliance on the Court's prior dismissal of the pleadings -- which was based on close legal questions upon which reasonable people could differ given a court's legitimate, yet subjective, determinations on these issues -- ignores the fact that Mr. Egiazaryan's claims were "of a quality sufficient to make the suit as a whole nonabusive." *See id*.

Therefore, because he cannot rely on this Court's prior dismissal of Mr. Egiazaryan's defamation claims to prove that those claims were frivolous, defendant's anti-SLAPP counterclaim should be dismissed. *See FORSA*, 313 F. Supp. 2d at 344-45 (notwithstanding its dismissal of plaintiff's complaint and its finding that plaintiff's "argument [was] unpersuasive,

- 6 -

[the court held] it is not frivolous" and dismissed the anti-SLAPP counterclaim because plaintiff's underlying "suit was not brought without a substantial basis in fact and law").

### B. Defendant Fails To Address Plaintiff's Actual Defamation Claims And Rebut Mr. Egiazaryan's Showing That His Claims Had A Substantial Basis In Fact And Law

Defendant mischaracterizes the very defamation claims that the Court is being asked to analyze, contending that the "essence of the defamation claim is that Zalmayev's commentary falsely asserted that Egiazaryan was (1) a member of the LDPR and that Egiazaryan (2) provided significant financing for the LDPR, and that those assertions were untrue." Defendant's Opposing Mem., pp. 20-21. This description of Mr. Egiazaryan's defamation claims is wrong, and defendant's argument that his "assertions of membership [in the LDPR] were true" misdirects the Court from assessing the substantial basis of Mr. Egiazaryan's *actual* defamation claims, *i.e.*, that Mr. Zalmayev published false statements asserting that Mr. Egiazaryan is an anti-Semitic and anti-American xenophobe who embezzled Chechen relief funds and committed war crimes, including statements explicitly branding Mr. Egiazaryan as an "anti-Semitic bigot" with a "well-established record of anti-Semitism and hate speech." *See*, *e.g.*, Count II of the Amended Complaint.

Plaintiff's Complaint did not assert that references to plaintiff's association with the LDPR are defamatory. As a review of the Complaint clearly shows, the defamatory allegations were those that portrayed Mr. Egiazaryan as guilty of being, among other things: an anti-Semitic and anti-American racist who has "contributed significantly to Russia's growing climate of ethnically based intolerance and xenophobia" (Count I); an "anti-Semitic bigot" with a "well-established record of anti-Semitism and hate speech" (Count II); a "contributor to the destructive second Chechen war" as a result of embezzlement or mismanagement of government funds

earmarked for the reconstruction of Chechnya, and one who "provid[ed] cover for the numerous well-documented atrocities during the war" (Count III); and a bigot with "virulently anti-Semitic, anti-American and xenophobic views" (Count IV).  These are the statements upon which Mr. Egiazaryan based his action, and these are the statements for which Mr. Egiazaryan had a substantial basis in fact and law to allege were defamatory.[4]

This Court, too, has recognized that plaintiff's defamation claims are based primarily on defendant's statements portraying Mr. Egiazaryan as anti-Semitic and anti-American and having committed criminal acts or atrocities.  In its July 30, 2012 Order (the "July 30 Order"), the Court described Count I of plaintiff's Amended Complaint as concerning the allegation that "Egiazaryan is anti-Semitic and anti-American" (July 30 Order, p. 18), Count II as concerning the allegation that "Egiazaryan is anti-Semitic" (July 30 Order, p. 21), Count III as concerning the allegations that Egiazaryan "'embezzled or mismanaged funds' and that he was 'responsible

---

[4] Although Mr. Egiazaryan disputes the truth of defendant's statements describing him as a leader, member and financier of the LDPR, Mr. Egiazaryan never alleged in his pleadings that those particular statements were defamatory.  Accordingly, because those statements were not part of plaintiff's underlying defamation suit, they cannot now be alleged to comprise a SLAPP suit, and each of the alleged facts, arguments and evidence that defendant advanced in his papers to purportedly demonstrate that Mr. Egiazaryan was a member and financier of the LDPR is irrelevant.  Therefore, unless the Court requests it, Mr. Egiazaryan will not respond to the purported facts and evidence -- much of which is unauthenticated and inadmissible and cannot be considered on a summary judgment motion -- that defendant falsely claims establish plaintiff's membership in and support of the LDPR.  In any event, even if the Court found that Mr. Egiazaryan's denial of being a member or financier of the LDPR was a part of his defamation claims and that his denial lacked a substantial basis in fact, that finding could not support a determination that Mr. Egiazaryan's lawsuit as a whole lacked a substantial basis in fact and law. *See Gurary*, 303 F.3d at 223 (holding that under FRCP Rule 11, the Court should look to the nonfrivolous claims in a pleading to determine if they "are of a quality sufficient to make the suit as a whole nonabusive").  Here, because the heart of Mr. Egiazaryan's pleadings concerned the defamatory nature of defendant's statements alleging Mr. Egiazaryan to be an anti-Semitic bigot, and because these claims were not frivolous, this Court should find that plaintiff's lawsuit as a whole had a substantial basis in fact and law.

for war crimes or contributed to human rights violations'" (July 30 Order, p. 22)[5], and Count IV

as concerning the allegation that plaintiff is "anti-Semitic or anti-American" (July 30 Order,

p. 27).

One would never know by reading defendant's motion papers that these are the

statements comprising Mr. Egiazaryan's defamation claims.  Defendant makes no reference to

the Moscow Times article or its statements describing plaintiff as an "anti-Semitic bigot" with a

"well-established record of anti-Semitism and hate speech" (Count II), despite Mr. Egiazaryan's

in-depth analysis of this Count in his moving papers.  *See* Plaintiff's Moving Mem., pp. 31-40.

Nor does defendant reference the Freedom House letters (Count IV) and the Ponomarev and

Alexeyeva letters or their statements alleging that Mr. Egiazaryan provided cover for war

atrocities, embezzled funds, and was a contributor to the second Chechen war (Count III).

Notably, defendant's two memoranda of law, totaling forty-eight pages, reference the terms

"anti-Semite" or "anti-Semitic" only twice, "anti-American" only once, and never once refer to

---

[5] Although this Court held in its July 30 Order, at p. 24, that the "letters do not accuse Egiazaryan of responsibility for war crimes, contributing to human rights violations, or, lastly, embezzlement," discovery confirms that those were the very accusations that defendant published about Mr. Egiazaryan to induce the signatories' cooperation for the letters which could be reasonably held to suggest these false accusations.  *See, e.g.*, Peter Zalmayev's Eurasia Democracy Initiative campaign paper, which he provided to Freedom House, among others, attached as Exhibit 1 to the Declaration of Jason T. Cohen in Further Support of Plaintiff's Motion For Summary Judgment Dismissing Defendant's Anti-Slapp Counterclaim and in Opposition to Defendant's Cross-Motion for Summary Judgment, dated July 3, 2013, and produced as Freedom H. 00002 through 00005.  This document said, among other things, that "There is weighty evidence pointing to Yeghiazaryan's complicity (both direct and indirect) in a number of crimes against humanity during the prosecution of the anti-terrorist campaign in Chechnya"; "Yeghiazaryan was directly involved in embezzling large chunks of the appropriations for the war-torn republic"; and "Yeghiazaryan was at the center of that conflict, diverting significant amounts from the state budget straight into his own pockets."  This discovery reveals that the letters were intended to present these messages.  Defendant knew that these statements were false.  His close confidant in the black public relations campaign admitted at his deposition that "We established that Chechnya thing was not -- we could not say with certainty. . . .  We couldn't find any credible evidence."  *See* Plaintiff's Moving Mem., p. 39.

xenophobia, Chechnya or Chechen relief funds.  By contrast, defendant's memoranda of law references the term "LDPR" at least 59 times.

As these facts demonstrate, defendant has made no attempt in his papers to respond to plaintiff's arguments establishing the substantial basis of the defamation claims.  *See* Plaintiff's Moving Mem., pp. 31-40 (in which Mr. Egiazaryan offered substantial proof that defendant's statements were false and that he had a substantial basis to bring the underlying action).  Instead, defendant opted to assert a classic "straw man" opposition in which he re-defined the defamation claims to falsely contend that they were limited to statements describing Mr. Egiazaryan as being affiliated with the LDPR.

**POINT II**

**<u>MR. EGIAZARYAN'S LAWSUIT WAS NOT A SLAPP SUIT</u>**

Mr. Egiazaryan is entitled to summary judgment because his lawsuit was not a SLAPP suit.  Defendant had to prove, among other things, both that (i) Mr. Egiazaryan was a "public applicant or permitee" and (ii) the lawsuit was an "action involving public petition and participation."  *See* N.Y. Civil Rights Law § 70-a (1); N.Y. Civil Rights Law § 76-a(1)(a)-(b). These two elements under the anti-SLAPP statute focus on separate and distinct conduct.  The "public applicant or permitee" element focuses on whether the ***plaintiff*** (*i.e.¸* Mr. Egiazaryan) has made an application to a government body for ***permission to act***.  The "public petition and participation" element focuses on whether the ***defendant*** (*i.e.*, Mr. Zalmayev) has ***directly and publicly challenged*** that application.  Defendant has not met his burden of proving either of these two elements, "which must be strictly construed" because the "anti-SLAPP law is in derogation of the common law".  *Hariri v. Amper*, 51 A.D.3d 146, 151, 854 N.Y.S.2d 126, 130 (1st Dep't 2008); *Guerrero v. Carva*, 10 A.D.3d 105, 117, 779 N.Y.S.2d 12, 21 (1st Dep't 2004).

- 10 -

**A. Defendant Fails To Rebut The Evidence Put Forth By Mr. Egiazaryan Establishing That He Is Not a "Public Applicant Or Permitee" And That His Lawsuit Did Not Involve "Public Petition And Participation" Within The Meaning Of New York's Anti-SLAPP Statute**

The anti-SLAPP statute is designed to protect persons who participate in a process in which the public's views are sought and welcome on issues of public concern. It is not designed to protect people in a process in which the public's views are not sought and are unwelcome.

There can be no dispute that the asylum application process is the latter type of process -- the public's views are not sought and are unwelcome. Defendant concedes that "[a]sylum applications are reviewed in a **_closed_** process." Defendant's Opposing Mem., p. 11 (emphasis added); *see also* Defendant's Memorandum of Law in Opposition to Ashot Egiazaryan's Motion to Dismiss the Counterclaims, dated September 15, 2011 (Docket Entry #36), at 2 (same). Because the touchstone of any anti-SLAPP suit is the **_public_** nature of the application or proceeding at the heart of the action (*see* Plaintiff's Moving Mem., pp. 17-18), defendant's concession is fatal to his argument that an asylum application can serve as the basis of an anti-SLAPP suit.

**1. Mr. Egiazaryan is Not a "Public Applicant or Permitee" Seeking Permission to Act**

Defendant failed to rebut the following evidence establishing that an asylum applicant is not a "public applicant or permitee," which the Second Circuit has described as "persons whose proposed actions required government permission" (*Chandok v. Klessig*, 632 F.3d 803, 819 (2d Cir. 2011)):

- Asylum applications are not requests seeking permission to act because, pursuant to the 1951 Convention relating to the Status of Refugee and the 1967 Protocol relating to the Status of Refugees, the grant of asylum is an *obligation* which must be provided to protect refugees, including allowing refugees to remain and work in the country of refuge. *See* Convention relating to the Status of Refugee, July 28, 1951, 189 U.N.T.S. 150 (the "1951 Convention"), Articles 17, 21, 32-33;

Protocol relating to the Status of Refugees, Jan. 31, 1967, 606 U.N.T.S. 267, 19 U.S.T. 6223 (the "1967 Protocol"), Articles 17, 21, 32-33.  An application for asylum is merely a process by which one seeks an affirmance that he meets the criteria for protection under the 1951 Convention or 1967 Protocol and that he should not be removed from the country of refuge.  This principle is embodied in the very title of the asylum application:  "Application for Asylum and Withholding of Removal."[6]  Moreover, an asylum seeker is under no duty to make an application for asylum at all to receive protection, but may rely upon the facts of his persecution as a defense to removal;

- The fact that asylum applications are not public applications is demonstrated by the extensive confidentiality regime set forth by federal regulation.  *See* 8 C.F.R. §§ 208.6(a)-(b).  It is understood that if information about their contents -- or even their existence -- were "disclosed publicly, [that public disclosure] could subject the claimant to retaliatory measures by government authorities or non-state actors in the event the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin."  *Memorandum by Joseph E. Langlois*, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, June 15, 2005 (Ex. 30 to the Moving Cohen Decl.);

- The New York legislature did not contemplate asylum applications when it enacted the anti-SLAPP statute.  *See* Bill Jacket, L. 1992, ch. 767 (Ex. 1 to the Moving Cohen Decl.), p. 19 ("SLAPP Suits are usually brought to deter participation in such matters as landfill location, the disposal of hazardous waste, and the development of land."); transcript of New York Senate debate on the anti-SLAPP statute, NY Senate Debate on Assembly Bill 4299, July 1, 1992, attached as Ex. 33 to the Moving Cohen Decl., p. 8706-07, 8719-21; and

- When defendant tried to contact the Department of Homeland Security ("DHS") directly to challenge Mr. Egiazaryan's purported asylum application and to set up a meeting to discuss the matter further, the DHS rebuffed Mr. Zalmayev's efforts and explained that "privacy provisions relating to asylum applications… preclude [the DHS] from discussing even whether an individual has or hasn't filed an asylum application.  As such, [the DHS does] not believe it is appropriate to meet at this time."  *See* e-mail chain between Peter Zalmayev and DHS official Charles Nimick, dated March 31, 2011 to April 1, 2011, Bates stamped PZ003466-68, attached as Exhibit 34 to the Cohen Decl., at PZ003467.

---

[6] *See* I-589, Application for Asylum and for Withholding of Removal, http://www.uscis.gov/files/form/i-589.pdf, last accessed July 3, 2013.

- 12 -

### 2.  **Defendant Did Not Engage in "Public Petition and Participation"**

Defendant also failed to address Mr. Egiazaryan's evidence establishing that an action

involving defamatory statements made in connection with an alleged asylum application does not

involve "public petition and participation."  As set forth in his moving papers, the "narrow

construction of the anti-SLAPP law requires that a SLAPP-suit defendant… *directly challenge*

an application or permission [under this element] in order to establish a cause of action under the

Civil Rights Law."  *Guerrero* 10 A.D.3d at 117, 779 N.Y.S.2d at 21 (emphasis added).  Under

New York law, the challenge must be of a public nature and made directly to a relevant

governmental body (*see* Plaintiff's Moving Mem., p. 21), and the publications at issue must

identify a *particular* application or permit that plaintiffs have sought or received or cite to a

*specific* proceeding pending before an administrative agency in which the defendant was

advocating in opposition to the plaintiff.  *See Guerrero*, 10 A.D.3d at 117, 779 N.Y.S.2d at 21.

The evidence proffered by Mr. Egiazaryan on these issues that defendant failed to address or

rebut includes the following:

- Defendant is not a citizen advocate acting on his own behalf or on behalf of an organization acting in the public interest.  He is a paid agent carrying out the vendetta of a foreign principal.  His motivation was the money paid to him to carry out a black public relations campaign;

- Defendant's actions with respect to the Moscow Times article (Count II), Ponomarev and Alexeyeva letters (Count III), and Freedom House letters (Count IV) were not of the public nature contemplated by the anti-SLAPP statute because they were clandestine and he was not the signatory to any publications to a public body;

- Defendant went to great lengths to conceal his involvement to the recipients of the publications he drafted by adopting a strategy to "have several variations [of the publications], so it doesn't look suspiciously similar coming from different folks." (E-mail chain between defendant's co-conspirators Rinat Ahkmetshin and Douglas Bloomfield, dated February 26, 2011, Bates stamped BA00146 (Ex. 24 to the Cohen Decl.).);

- 13 -

- The purported challenge made by defendant in the Ponomarev and Alexeyeva letters did not have the specificity required under New York law because the letters do not even mention the word "asylum," let alone specify whether Mr. Egiazaryan had filed an application for asylum, or cite to a specific proceeding pending before a particular governmental agency;

- The purported challenges made by defendant in the Jewish Journal and Moscow Times articles and Freedom House letters do not have the specificity required under New York law because they do not indicate whether Mr. Egiazaryan had applied for asylum or whether a formal proceeding regarding his application was pending before DHS;

- The weight of authority requires defendant's purported challenges to have been made to relevant governmental bodies or agencies, but none of the statements alleged to be defamatory were published to such governmental bodies or agencies. Two of defendant's statements were published in the Jewish Journal and Moscow Times and were designed to influence the opinions of those papers' readerships. The defamatory statements in the Ponomarev and Alexeyeva letters and Freedom House letters are alleged by Mr. Egiazaryan to have been published when defendant made them to the signatories of the letters, not when those signatories forwarded the letters to government officials.[7]

---

[7] Defendant cites to *Duane Reade, Inc. v. Clark*, 2 Misc. 3d 1007(A), 784 N.Y.S.2d 920 (Sup. Ct. N.Y. Co. March 31, 2004), for the proposition that his statements published in the Jewish Journal were "public enough" to constitute "public petition and participation" under New York's anti-SLAPP statute. Defendant's Opposing Mem., p. 13. *Duane Reade* is inapposite and does not support defendant's position. In that case, the court held that it "does not read the anti-SLAPP statute so narrowly as to exclude from its protection the use of the press to petition and participate in a ***public proceeding***." *Id.* at \*6 (emphasis added). The court expressly relied on the ***public*** nature of the proceeding to support its conclusion that statements made in the press could be protected under the anti-SLAPP statute. Here, by contrast, there was nothing public about Mr. Egiazaryan's alleged asylum application. Indeed, as defendant concedes, "[a]sylum applications are reviewed in a ***closed*** process." Defendant's Opposing Mem., p. 11 (emphasis added).) *See also Silvercorp Metals Inc. v. Anthion Management LLC*, 36 Misc. 3d 660, 668, 948 N.Y.S.2d 895, 901-02 (Sup. Ct. N.Y. Co. July 10, 2012) (declining to follow *Duane Reade* and holding that "in the absence of any allegation that defendant was 'petitioning an agency regarding an application or permission' of [plaintiff], the Court holds that [plaintiff's] action 'did not affect defendant[s'] rights of public petition and participation before public agencies and, accordingly,' fails to state a claim under Civil Rights Law §§ 70–a and 76–a.").

### 3. Defendant Seeks to Have this Court View The Asylum Application as a Public Process

Rather than address Mr. Egiazaryan's evidence, defendant seeks to redefine the asylum application process to try to make his non-public efforts fall within the scope of the anti-SLAPP statute. First, defendant complains that the confidential (*i.e.*, closed) nature of the asylum process provides the United States government with "asymmetrical access to information". Defendant's Opposing Mem., p. 11. Then, to alleviate this perceived problem, he asserts that "[w]riting such letters and newspaper commentary is the only practical method by which concerned citizens can protect against the [federal government's] inadvertent award of asylum," and that the "only way someone can oppose an asylum application is to publish commentary in newspapers and write to government officials." Defendant's Opposing Mem., pp. 12-13.

Defendant's view of how to combat an applicant who has applied in a closed process does not bring his actions within the purview of the anti-SLAPP statute. The U.S. government does not consider asylum applications to be matters of public concern requiring public participation and challenge. Until such time as the legislature sees fit to change the asylum process to allow citizen input into every person's asylum application, defendant is not entitled to treat the process as open or public for the purposes of claiming anti-SLAPP suit protections.

As the evidence set forth above and in his moving papers demonstrates, Mr. Egiazaryan cannot be deemed a "public applicant or permitee" and his action cannot be said to involve "public petition and participation." While defendant, or anyone else, is free to publicly express his views on the merits of an asylum application, regardless of what he knows about the application or whether it even exists, such public expressions may not be afforded the procedural safeguards of New York's anti-SLAPP statute.

### B. Defendant's Reliance On This Court's Denial Of Plaintiff's Rule 12 Motion To Dismiss The Anti-SLAPP Counterclaim Is Misplaced

Rather than address the evidence put forth by Mr. Egiazaryan to demonstrate that an applicant for asylum is not a "public applicant or permitee" and that actions involving purported challenges to asylum applications do not involve "public petition and participation," defendant opposed plaintiff's argument on the ground that this Court already "ruled in [its] opinion denying Egiazaryan's motion to dismiss the anti-SLAPP counterclaim that Egiazaryan has made the type of application, his application for asylum, that triggers the anti-SLAPP statute." Defendant's Opposing Mem., p. 11. Defendant's reliance on the Court's findings in its December 7, 2011 Order denying plaintiff's motion to dismiss the anti-SLAPP claim is misplaced in opposition to a motion for summary judgment.[8]

Federal courts apply two different standards in resolving Rule 12(b)(6) motions to dismiss and Rule 56 motions for summary judgment. *See, e.g.*, *Linares v. McLaughlin*, 423 Fed. Appx. 84, 85 (2d Cir. 2011). As a result, a denial of a motion to dismiss a claim will not preclude a court from later granting summary judgment dismissing that same claim. As stated by the Second Circuit:

> On a motion to dismiss, a district court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." The denial of a defendant's motion to dismiss is not a *final* determination on the merits barring further litigation of the claims in question under the doctrine of res judicata. Even after denying a motion to dismiss, a district court may still grant a summary judgment motion if, based upon the evidence presented, there was no genuine dispute as to any material fact and the moving party was entitled to judgment as a matter of

---

[8] Defendant also argues that the Court's findings in its December 7, 2011 Order regarding the anti-SLAPP claim should be treated as law of the case. Defendant's Opposing Mem., p. 9. However, as explained in Mr. Egiazaryan's moving papers, the Court should decline to apply the law of the case doctrine and find that, on the evidence presented in support of Mr. Egiazaryan's motion, his defamation action was not a SLAPP suit under New York law.

law.

*Id.* (internal citations omitted).

Here, the Court's findings in its December 7, 2011 Order on the issue of whether the "public applicant or permitee" and "public petition and participation" requirements were met do not preclude it from granting summary judgment to Mr. Egiazaryan dismissing the defendant's anti-SLAPP counterclaim on these grounds. In denying plaintiff's earlier Rule 12(b)(6) motion, the Court considered no evidence, accepted all allegations in the counterclaim as true, and afforded all reasonable inferences to defendant. On that basis, this Court found only that defendant's anti-SLAPP claim was plausible on its face and could survive the pleading stage. Here, by contrast, in deciding the parties' Rule 56 motions for summary judgment, the Court will consider extrinsic evidence and, since there are no genuine issues of material fact, it will determine as a matter of law whether Mr. Egiazaryan's lawsuit was a SLAPP suit under New York law. In light of the evidence proffered by Mr. Egiazaryan, and the failure by defendant to put forth *any* evidence on these issues, this Court should grant Mr. Egiazaryan's motion for summary judgment and deny defendant's cross-motion.

## POINT III

### DEFENDANT CANNOT RECOVER DAMAGES UNDER NEW YORK'S ANTI-SLAPP STATUTE

As set forth in Mr. Egiazaryan's moving papers, defendant may recover certain damages under the anti-SLAPP statute only at the Court's discretion. If defendant, in addition to establishing that plaintiff's underlying lawsuit was a SLAPP suit which was "commenced or continued without a substantial basis in fact and law" (which may allow the defendant to be awarded costs and attorneys' fees), can also prove that plaintiff's suit was "commenced or continued for the purpose [or ***sole*** purpose] of harassing, intimidating, punishing or otherwise

maliciously inhibiting the free exercise of speech, petition or association rights," defendant may be awarded "other compensatory damages" or punitive damages at the Court's discretion.  N.Y. Civil Rights Law § 70-a(1)(a)-(c) (emphasis added).  However, defendant has not articulated any viable claim for "other compensatory damages," and while he concedes that plaintiff did **_not_** commence or continue his suit for the **_sole_** purpose of harassing or intimidating defendant, thereby precluding him from obtaining punitive damages, defendant has not adduced any evidence that that was even a **_single_** purpose of Mr. Egiazaryan's.

First, defendant may not recover "other compensatory damages" under the anti-SLAPP statute because he has not articulated any viable claim for such damages.  Prior to submitting his opposition to Mr. Egiazaryan's motion for summary judgment, defendant had never proffered *any* evidence of *any* damages other than litigation costs and fees.  In response to Mr. Egiazaryan's motion, defendant submitted a one-page declaration in which, for the first time in this litigation, he purported to describe his "other compensatory damages."  *See* Declaration of Peter Zalmayev, dated June 3, 2013 ("Zalmayev Decl."), attached as Exhibit 33 to the Declaration of James P. Golden, dated June 3, 2013 ("Golden Decl.").  The Zalmayev Declaration describes defendant's compensatory damages as consisting only of damages for mental distress caused by the commencement of Mr. Egiazaryan's lawsuit.  *See* Zalmayev Decl., Ex. 33 to Golden Decl.

Such an allegation of mental distress, even if true, has no merit under New York law.  It is well-settled in New York that, absent limited exceptions which do not apply here, claims for mental distress must accompany some physical manifestation of injury (*see, e.g.*, *Creed v. United Hosp.*, 190 A.D.2d 489, 492, 600 N.Y.S.2d 151, 153 (2d Dep't 1993) (dismissing claim where party sought to recover "for emotional harm unaccompanied by any form of physical trauma")

(quotation and citation omitted)), and being named a defendant in a lawsuit does not amount to physical injury. Because defendant has not submitted any evidence of physical manifestation of injury, defendant has not set forth any viable claim for compensatory damages under N.Y. Civil Rights Law § 70-a(1)(b).

Second, defendant has not adduced **_any_** evidence that Mr. Egiazaryan's lawsuit was "commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." N.Y. Civil Rights Law § 70-a(1)(b)-(c). Defendant claims in his opposition papers that Mr. Egiazaryan commenced his action "to deter any individual who attempts to explain Egiazaryan's actual history to United States authorities," "to silence all dissent," and "because Zalmayev commented about the propriety of Egiazaryan's request for asylum application and advocated that asylum be denied." *See* Defendant's Opposing Mem., pp. 12, 14, 38. Each of these assertions is unsupported by any evidence and is based on defendant's pure surmise and speculation, which is insufficient to defeat summary judgment. While Mr. Egiazaryan put forth evidence in his moving papers demonstrating that his suit was a legitimate exercise of his legal right to sue for defamation -- defamation which, left unchecked, put Mr. Egiazaryan's life and liberty at risk -- defendant failed to rebut that showing or proffer any evidence to suggest that Mr. Egiazaryan's purpose was to maliciously inhibit defendant's speech or petition rights.

Defendant's failure to put forth any evidence demonstrating Mr. Egiazaryan's alleged malicious purpose warrants the dismissal of his anti-SLAPP counterclaim. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("The movant's burden 'will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's

- 19 -

claim.'") (*quoting Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986).

Third, even if the Court found that one of Mr. Egiazaryan's purposes in commencing his lawsuit was to maliciously inhibit the exercise of defendant's speech or petition rights, defendant concedes that plaintiff did not commence or continue his lawsuit for the ***sole*** purpose of harassing or intimidating him.  In his opposition papers, defendant admits that there are at least "***two*** purposes alleged by Zalmayev":  "that Egiazaryan sued to inhibit free speech, etc. and to obtain discovery to assist Egiazaryan's case in London against Mr. Kerimov."  Defendant's Opposition Mem., p. 40 (emphasis added).  Defendant also concedes that if the jury agrees with his argument that Mr. Egiazaryan commenced his action for at least "two purposes… there would be no punitive damages".  (*Id.*)  Because Mr. Egiazaryan maintains that neither of these "purposes" served as the basis of his lawsuit, it is apparent that neither party would argue to the jury that the ***sole*** purpose of the lawsuit was to maliciously inhibit defendant's speech or petition rights.  Accordingly, there is no reason why this question even should be presented to the jury.  Defendant's claim for punitive damages under the anti-SLAPP statute should therefore be dismissed.

Even if defendant could be awarded damages under New York's anti-SLAPP statute, the Court should exercise its discretion and decline to award any damages to defendant.  Defendant has not rebutted plaintiff's specific evidence demonstrating his unclean hands, including evidence that:  (i) defendant was motivated only by financial gain and paid tens of thousands of dollars to carry out the malicious smear campaign against Mr. Egiazaryan (Plaintiff's Moving Mem., pp. 4-5, 45); (ii) defendant acted surreptitiously and engaged in deceitful behavior to harm Mr. Egiazaryan on behalf of a wealthy foreign principal (Plaintiff's Moving Mem., pp. 7-11, 45-

46); and (iii) defendant's principal collaborator, Rinat Akhmetshin, intentionally destroyed relevant evidence (Plaintiff's Moving Mem., pp. 46-48).  Nor did defendant address plaintiff's argument that, because he published the allegedly defamatory statements while acting on behalf of a foreign principal, Mr. Zalmayev was required to register under the Foreign Agents Registration Act and publicly disclose his relationship with that foreign principal.  *See* 22 U.S.C. § 611 *et seq*.  Finally, because defendant's counsel already has been paid -- and continues to be paid -- by Mr. Zalmayev's wealthy Russian benefactor, any award of attorneys' fees to defendant under the anti-SLAPP statute would constitute a windfall for defendant and a penalty against Mr. Egiazaryan.[9]  This Court should exercise its discretion to decline to award any fees to Mr. Zalmayev and, consequently, to dismiss the anti-SLAPP counterclaim.

## CONCLUSION

Mr. Egiazaryan has demonstrated that he brought a lawsuit for completely legitimate purposes, based on undisputed facts and consistent with recognized legal principles.  Defendant has ignored Mr. Egiazaryan's evidence and asserted a "straw man" opposition in which he argues the wrong legal standard, does not address the actual allegations in plaintiff's pleadings, and ignores most of the material arguments contained in plaintiff's moving memorandum of law. For the foregoing reasons and the reasons set forth in Mr. Egiazaryan's moving papers,

---

[9] Defendant cites to *Simmonds v. New York City Dep't of Corr.*, No. 06 Civ. 5298, 2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008) and *Davis v. New York City Housing Auth.*, No. 90 Civ. 628, 2002 WL 31748586 (S.D.N.Y. Dec. 6, 2002) as standing for the proposition that he may be awarded attorneys' fees.  Both of these cases are inapposite:  they involve an award of attorneys' fees under Title VII and Title VI of the Civil Rights Act to the prevailing parties' attorneys who provided their services *pro bono*.  Here, defendant's counsel has not provided *any* services to Mr. Zalmayev *pro bono*.  Defendant's counsel is being compensated for his services by the Russian oligarch who defendant claims retained him to carry out the malicious smear campaign against Mr. Egiazaryan.  Under these circumstances, any attorneys' fees awarded to defendant would constitute an unjustified windfall.

plaintiff's motion for summary judgment dismissing defendant's anti-SLAPP counterclaim

should be granted and defendant's cross-motion should be denied.

Dated:  New York, New York
          July 3, 2013

FLEMMING ZULACK
    WILLIAMSON ZAUDERER LLP

By:_____/s/_____
        Mark C. Zauderer
        Jason T. Cohen
        Grant A. Shehigian
One Liberty Plaza
New York, New York 10006
(212) 412-9500

*Attorneys for Plaintiff Ashot Egiazaryan*

- 22 -